In the Matter of
Wayne R. WILLIAMS

79-145                                             592 S.W. 2d 438

April 9, 1979

PER CURIAM. It appears to the court that:

This court accepted the surrender of the license of Wayne R. Williams to practice law in the State of Arkansas upon his petition and the recommendation of the Supreme Court Committee on Professional Conduct, upon conditions set out in a per curiam order entered July 19, 1976, viz:

> Accordingly, we deem it appropriate to accept surrender of petitioner's license for a two-year period, but this does not mean petitioner will be automatically reinstated at the end of this period. *Petitioner will only be readmitted upon a satisfactory showing to the Board of Law Examiners that his character and integrity are such that he deserves readmittance.* Another condition of the suspension is that petitioner refrain from assisting any other attorney

engaged in the practice of law and from accepting employment by any other attorney in any capacity whatever during the term of his suspension. The burden of proof shall rest upon petitioner in making those showings to the Board of Law Examiners.

The State Board of Law Examiners has certified that it has conducted a hearing as a result of which it found:

(a) that Wayne R. Williams has satisfactorily shown that his character and integrity are such that he deserves readmission; and,

(b) that Wayne R. Williams has refrained from assisting any attorney engaged in the practice of law and has not accepted employment from any attorney in any capacity during the term of his suspension.

It is therefore ordered that Wayne R. Williams be readmitted to the practice of law and that his license to do so be reissued.

HARRIS, C.J., and BYRD and HICKMAN, JJ., dissent.

CARLETON HARRIS, Chief Justice, dissenting. The Committee order entered when Mr. Williams surrendered his license provided that petitioner will not be automatically reinstated at the end of the two year period, but "will only be readmitted upon a satisfactory showing to the Board of Law Examiners that his character and integrity are such that he deserves readmittance".

Since this court has the final responsibility, I likewise feel that this language is properly interpreted to the effect that the showing must also be satisfactory to the members of this court.

While I have every confidence in the members of the Committee, and normally accept their findings, there are still, to me, some matters wherein the investigation failed to establish to my satisfaction that Williams should be reinstated at this time.

CONLEY BYRD, Justice, dissenting. For the reasons hereinafter stated I cannot accept the recommendation of the State Board of Law Examiners that Wayne R. Williams should be reinstated as a member of the Bar of Arkansas.

In Williams' 1976 petition for the surrender of his license [the petition is set out in full in Justice Hickman's dissent] we see that, through his lust for filthy lucre, Williams in 1973 cheated the man that he had been employed to help. When his infidelity was shown to public light, Williams, for no apparent purpose other than having someone to share his shame, falsely swore that he was cheating his benefactor to bribe the deputy prosecuting attorney. Based upon Williams' statements of his conduct, on July 19, 1976, we entered the following order, to-wit:

> "Accordingly we deem it appropriate to accept surrender of petitioner's license for a two-year period, but this does not mean petitioner will be automatically reinstated at the end of this period. *Petitioner will only be readmitted upon a satisfactory showing to the Board of Law Examiners that his character and integrity are such that he deserves readmittance.* . . . The burden of proof shall rest upon petitioner in making those showings to the Board of Law Examiners."

The terms "character" and "integrity" both have well defined and readily understandable meanings. Black's Law Dictionary, 3rd ed., defines "character" as:

> "That moral predisposition or habit, or aggregate of ethical qualities, which is believed to attach to a person, on the strength of common opinion and report concerning him. A person's fixed disposition or tendency, as evidenced to others by his habits of life, through the manifestation of which his general reputation for the possession of a character, good or otherwise, is obtained. . . ."

> " 'Character' is what a man is, and 'reputation' is what he is supposed to be. *Hopkins* v. *Tate,* 99 A. 210, 211, 255 Pa. 56; *State* v. *Picket,* 202 Iowa 1321, 210 N.W. 782, 783.

'Character' depends on attributes possessed, and 'reputation' on attributes which others believe one to possess. *Bills* v. *State,* 187 Ind. 721, 119 N.C. 465. The former signifies reality and the latter what is accepted to be reality at present. *State* v. *Leabo,* 120 Or. 160, 249 P. 363."

The same authority defines "integrity" as:

"As occasionally used in statutes prescribing the qualifications of public officers, trustees, etc., this term means soundness of moral principle and character, as shown by one person dealing with others in the making and performance of contracts, and fidelity and honesty in the discharge of trusts; it is synonymous with 'probity,' 'honesty,' and 'uprightness.' . . . "

Now, obviously, Williams' *moral predisposition and habits* as shown by his own petition demonstrate that he lacks that *moral principle of fidelity and honesty in the discharge of trusts* that would qualify under the definition of "integrity" as shown above. How did the State Board of Law Examiners arrive at a different conclusion? The record, page 12, shows that the State Board of Law Examiners chose to consider none of Williams' conduct prior to July 19, 1976, the date we accepted the surrender of his license and considered only his conduct subsequent to that date for the purpose of determining his "character and integrity." Apparently, the majority, in accepting the recommendation of the State Board of Law Examiners to reinstate Williams, are condoning that action on the part of the Board. Now obviously, the majority cannot explain to me why the State Board of Law Examiners should place such a limitation on their inquiry into the *character and integrity* of Williams, but I submit that the majority owe an explanation to the citizens of this State why the State Board of Law Examiners can take such a short circuited view of Williams' character and integrity.

For the reasons herein stated, I respectfully dissent.

DARRELL HICKMAN, Justice, dissenting. I respect the majority's position in standing behind its per curiam decision

which in effect suspended Wayne R. Williams' right to practice law for two years. This was done upon the recommendation of the Supreme Court Committee on Professional Conduct that Williams be allowed to surrender his license for two years, and that, after such time and upon a satisfactory showing that his character and integrity deserved readmittance, he be readmitted.

My dissent is that the majority was wrong in the first place.

Williams' misconduct can best be described in his own words. His original petition is set forth in full.

## I.

That there is presently pending before the Supreme Court Committee on Professional Conduct a complaint and investigation against me concerning my professional conduct including the following allegations, to-wit:

(a) That Frank S. Wheat was arrested on or about August 30, 1973, by Clark County and Arkadelphia authorities on criminal charges including narcotics violations. I was employed by Frank S. Wheat and his father, B. F. Wheat, Jr. to defend Frank S. Wheat. I quoted a fee of Five Hundred Dollars ($500.00) which was paid in two installments of Two Hundred and Fifty Dollars ($250.00) each.

(b) Thereafter on September 5, 1973, I falsely stated to B. F. Wheat, Jr. that an additional sum of Five Thousand Dollars ($5,000.00) would have to be paid to get probation for his son.

(c) That at the time I informed B. F. Wheat, Jr. he would have to pay Five Thousand Dollars ($5,000.00) in addition to the Five Hundred Dollars ($500.00) previously paid, I knew that arrangements had already been made (on September 3, 1973) for Frank S. Wheat to be recommended for a probationary sentence con-

tingent upon both his and my assistance (working as a go between) with certain narcotics undercover agents. We fulfilled this role to the satisfaction of authorities between September 3, 1973 and September 13, 1973, and on the latter date I was advised that the probationary sentence would be recommended and that sentencing would take place on September 14, 1973, in Miller County. In view of the circumstances, this additional Five Thousand Dollars ($5,000.00) was clearly an excessive fee.

(d) That unknown to me and on September 6, 1973, B. F. Wheat, Jr. contacted another Arkadelphia attorney and discussed the Five Thousand Dollars ($5,-000.00) I had stated would have to be paid. Following this conference and discussions with other persons, B. F. Wheat, Jr. agreed to wear an electronic listening device upon his person and to return to my office on September 10, 1973, to engage me in a conversation regarding the nature of the additional Five Thousand Dollars ($5,-000.00) payment.

(e) That in the course of my discussion of September 10, 1973 with B. F. Wheat, Jr., I stated to B. F. Wheat, Jr. that this Five Thousand Dollars ($5,-000.00) was not a legal fee for me and I falsely implied to B. F. Wheat, Jr. that the Five Thousand Dollars ($5,-000.00) would be used by me to influence unnamed and undescribed third persons in order to secure favorable treatment for his son. B. F. Wheat, Jr. gave me One Thousand Dollars ($1,000.00) of the Five Thousand Dollars ($5,000.00) in my office on September 10, 1973.

(f) That on September 14, 1973, Frank S. Wheat received a probationary sentence in the Miller County Circuit Court. Following the sentencing, B. F. Wheat, Jr. gave me Four Thousand Dollars ($4,000.00). Following the delivery of the Four Thousand Dollars ($4,-000.00) to me, I was arrested by police officers with the City of Texarkana and was subsequently charged with bribery and related crimes.

(g) That on September 14, 1973 following my arrest, I gave a statement to the law enforcement authorities in which I did not make any admissions of bribery and did not implicate anybody else, and in which I claimed any money I received from B. F. Wheat, Jr. was solely to be my fee.

(h) That on September 17, 1973, in the presence of my attorney, I gave a free and voluntary oral statement to Texarkana police officers in which I stated this Five Thousand Dollars ($5,000.00) was the sum of money Deputy Prosecuting Attorney Travis Mathis had agreed to accept in order for him to recommend a probationary sentence for Frank S. Wheat; and that the One Thousand ($1,000.00) given to me by B. F. Wheat, Jr. on September 10, 1973 had been turned over to Travis Mathis by me on the same day; and that the Four Thousand Dollars ($4,000.00) I received from Mr. Wheat on September 14, 1973, was also to be turned over by me to Travis Mathis. All of the information in this statement implicating Mr. Mathis was a falsehood.

(i) That on September 19, 1973, in the presence of my attorney, I gave another free and voluntary statement to law enforcement authorities in which I reiterated much of what I had said on September 17, 1973 and which was false. In that statement, I declared that the Honorable John Goodson, Circuit Judge, was in no way involved in any bribery scheme.

(j) That my actions as related above resulted in Attorney Travis Mathis being indicted on November 7, 1973 by Clark County Grand Jury on a bribery charge, accompanied by newspaper publicity giving details of my allegations against Mr. Mathis.

(k) That I did not publically acknowledge the innocence of Mr. Mathis of the bribery charge until my letter to him dated March 18, 1974, in which I related he was never involved in any bribe concerning the Frank S. Wheat case.

(l) That on the 27th and 28th days of June, 1974, I

was tried on a bribery charge in the Clark County Circuit Court during which I testified that the Five Thousand Dollars ($5,000.00) from B. F. Wheat, Jr. was solely to be my fee, which fee was in addition to the Five Hundred Dollars ($500.00) previously paid to me, and no part of the money was to be used as a bribe. On June 28, 1974, the petit jury of Clark County was discharged by the Trial Judge before a verdict was reached, but while the jury stood eleven to one for acquittal. The case against me was later dismissed, the trial court holding a new trial would result in double jeopardy.

(m) That following the dismissal of the bribery case against me, the Prosecuting Attorney dismissed the bribery charge against Travis Mathis by court order dated September 27, 1974.

## II.

I hereby admit that the allegations against me contained in this petition are substantially true and correct. I know that if charges were brought against me based on the allegations herein, I could not successfully defend myself against them. In order to avoid further proceedings in this matter, I have decided to resign and surrender my license to practice as an attorney in the State of Arkansas for a period of two (2) years in the hope that the Court will consider such suspension an adequate punishment for my actions as aforesaid. This resignation is freely and voluntarily given. I have not been coerced, nor intimidated into surrendering my license, nor have I been made any promise of benefit nor given any inducement whatever to do so, and I am fully aware of the implications of this resignation.

## III.

I therefore petition this Court to accept my surrender of my Attorney's License and to remove me from the list of attorneys authorized to practice law in the State of Arkansas for a period of two (2) years and that following the said period of two (2) years that I then be

considered eligible for reinstatement as a licensed attorney in Arkansas subject to such conditions as may be set by this Court concerning any pertinent considerations for readmission including, but not limited to, establishment of my then good character and my good conduct during the suspension period.

## IV.

I make this request without any reservations and hope this matter will be handled without any undue publicity. I herewith tender my license certificate to this Court.

/s/ Wayne R. Williams
Wayne R. Williams

Williams' misconduct, then, was that he had committed several felonies, that he had led a layman to believe that the legal system was corrupt and that he had caused a fellow lawyer to be indicted by a grand jury. It would be difficult for me to think of misconduct of a more serious nature by any lawyer. While Williams had only been admitted to practice for a few months, he was of mature age; for his misconduct there can be no excuse.

The right to practice law is a privilege granted according to the laws of this State. While Williams has not been convicted of a felony, he has admitted that he committed several felonies. I believe the original judgment should have been that proceedings for disbarment should have been initiated — not to accept a voluntary surrender of the license.

Every week we review cases where individuals have been sentenced to the Arkansas penitentiary for less serious offenses. It is difficult for me to justify the majority's action in comparison.

While our profession is not held in high regard by all, it is an honorable one, composed of many honorable people who support and defend the profession against corruption and unfounded rumors of corruption. Our system of govern-

ment depends upon such people, and the integrity of such people. Their ranks must be limited to those deserving such a responsibility.

I find no evidence in the record regarding why Wayne R. Williams did what he did; perhaps such actions are self-explanatory. I only find in the record that he has not practiced law for two years, as he was prohibited from doing by law; that some local judicial officials and lawyers feel he deserves another chance. Certainly, Williams should not be unduly punished for his misconduct, but I am of the opinion that he has forfeited his right to practice law, and he has not demonstrated by evidence that he is of good moral character deserving readmittance to the bar.

Therefore, I respectfully dissent from the majority opinion.