16 S.W.3d 228 (2000)
341 Ark. 228
Jimmie L. WILSON
v.
James A. NEAL.
No. 99-103.
Supreme Court of Arkansas.
May 11, 2000.
*229 George Hairston, New York, NY; Roy C. Lewellen, Marianna; and Wilson & Valley, by: E. Dion Wilson, Helena, for appellant.
Robert J. Donovan, Marianna, for appellee.
ROBERT L. BROWN, Justice.
This case involves the discipline of an attorney, appellant Jimmie L. Wilson, where a majority of justices has been unable to agree on a single ground for reversal on the core issue of the proper sanction. Thus, the decision of the circuit judge is affirmed, and the opinions of this court have no precedential value.
The circuit judge determined that Mr. Wilson should be suspended from the practice of law for five years with credit given for the time he was previously disbarred from practice by this court. Two issues have been raised by Mr. Wilson in his appeal: (1) the circuit judge erred in failing to recuse in this matter; and (2) the five-year suspension ordered by the circuit judge exceeded the permissible sanction under our rules. Appellee James A. Neal as executive director of the Supreme Court Committee on Professional Conduct has cross-appealed on the basis that disbarment is the appropriate sanction. On two of the three issues, a majority of the court agrees. All seven justices agree that the circuit judge's decision not to recuse was not an abuse of discretion. Justice Brown, Justice Imber, Justice Thornton, Justice Smith, and Special Justice Burnett agree that the circuit judge's denial of disbarment should be affirmed.
As already stated, a majority of the court does not agree on the appropriate sanction for Mr. Wilson. Justice Thornton, Justice Smith, and Special Justice Burnett conclude that the circuit judge was limited to a one-year suspension under the Procedures then in effect with credit given for the period when Mr. Wilson was precluded from practicing law. Justice Brown and Justice Imber agree with the circuit judge that a five-year suspension is appropriate with credit given for the period when Mr. Wilson was precluded from practicing law. Chief Justice Arnold and Special Justice Shell conclude that disbarment is the appropriate sanction. Because a majority does not agree to reverse or modify the sanction imposed by the circuit judge, his decision is affirmed.
The opinion by Justice Brown affirming the circuit judge on all three issues is presented first followed by the opinion of Justice Smith in favor of a one-year suspension and the opinion of Chief Justice Arnold in favor of disbarment.
The conduct of Mr. Wilson at issue occurred almost twenty years ago. Disbarment proceedings have been ongoing for ten years. This is the fifth appeal we have had in the case. See Wilson v. Neal, 332 Ark. 148, 964 S.W.2d 199 (1998) (Wilson IV); Wilson v. Neal, 329 Ark. 125, 947 S.W.2d 338 (1997) (Wilson III) (per curiam); Neal v. Wilson, 321 Ark. 70, 900 S.W.2d 177 (1995) (Wilson II) (per curiam); Neal v. Wilson, 316 Ark. 588, 873 S.W.2d 552 (1994) (Wilson I); see also Neal v. Wilson, 112 F.3d 351 (8th Cir. 1997) and Neal v. Wilson, 920 F.Supp. 976 (E.D.Ark.1996). In Wilson I, we reversed the circuit judge who had found that Mr. Wilson's disbarment was barred by the statute of limitations, and we remanded for further proceedings. In Wilson II, we granted a writ of certiorari and held that then circuit judge Olly Neal lacked the *230 authority to sanction Mr. Wilson because a special circuit judge had been assigned to hear the case. In Wilson III, we denied Mr. Wilson's mandamus petition to include the federal record as part of his disbarment appeal. In Wilson IV, we reversed the disbarment order of the circuit judge and remanded the matter to that judge for him to consider the aggravating and mitigating standards of the American Bar Association in deciding the appropriate sanction.
The genesis of this matter was a disbarment complaint filed by the Arkansas Committee on Professional Conduct ("Committee") on October 9, 1991, after Mr. Wilson pled guilty to five misdemeanor offenses in federal district court as a result of a plea bargain with the United States Attorney. The criminal conduct involved had occurred ten years earlier in 1981 and 1982. The guilty pleas took place on August 22, 1990. Mr. Wilson pled guilty to three counts of violating 18 U.S.C. § 658 by "knowingly" disposing of soybeans and rice that were mortgaged and pledged to the FmHA, and two counts of violating 18 U.S.C. § 641 by "knowingly" taking money from a Department of Agriculture bank account and using it for unapproved purposes.[1] In 1985, the United States District Court suspended his license to practice law in the federal courts pending final resolution of any disciplinary action against him by the Committee and by this court. As a result of his guilty pleas, he served four and one-half months in federal prison.
This court affirmed the fact that Mr. Wilson violated Rule 8.4(b) of the Model Rules of Professional Conduct in Wilson IV. There, we held:
Although all five crimes were misdemeanors, we agree with the trial court that these convictions involved dishonesty and a breach of trust, and seriously undermined "the confidence of the public in our legal profession." See In Re Lee, 305 Ark. 196, 806 S.W.2d 382 (1991). Because we have no hesitation in holding that Wilson's convictions reflected adversely on Wilson's fitness to practice law, we affirm the trial court's finding that Wilson violated Model Rule 8.4(b).
332 Ark. at 161, 964 S.W.2d at 205-206. However, with regard to the appropriate sanction we concluded that the circuit judge had erred in finding that a violation of Model Rule 8.4(b) automatically required disbarment. We directed the circuit judge to evaluate and weigh certain aggravating and mitigating standards adopted by the American Bar Association in deciding the proper sanction. On remand, the circuit judge ordered that Mr. Wilson be suspended from the practice of law for five years, but he made no findings on specific aggravators and mitigators. This five-year suspension is the sanction before us in this appeal, as is the Committee's cross-appeal for disbarment.
I. Recusal
The pleadings filed subsequent to remand included a motion by Mr. Wilson to the circuit judge requesting that the judge recuse because of bias. He asserts that in the proceedings prior to the last appeal, the circuit judge showed that he *231 had no intention of adjudicating sanctions, and that he was committed to disbarment. Mr. Wilson asserts that the judge's promise of a sanction hearing in the proceedings prior to his last appeal, and his failure to provide one in the prior proceedings, showed a predisposition to refuse to adjudicate sanctions, and that the judge's additional conclusion in his decision in the prior proceedings that the undisputed facts dictated disbarment, showed that the judge intended to disbar Mr. Wilson regardless of law or fact.
Mr. Wilson also argues that comments by the circuit judge in his decision on the motion to recuse, and in his discussion on the motion for reconsideration, further show that the judge's prejudice remained unchanged and that a severe sanction was certain. He asserts that the order denying the recusal motion exhibits overt bias when the judge stated he took "umbrage" at the suggestion Mr. Wilson had been deprived of earning a living for two years. Mr. Wilson also cites as error a discussion between the judge and counsel on the day of the sanction hearing, when the motion for reconsideration was discussed. In response, the judge stated the word "umbrage" was intended to convey his disappointment at the allegation that Mr. Wilson had been deprived of making a living by the judge rather than as a personal insult.
There is a presumption of impartiality on the part of judges. Black v. Van Steenwyk, 333 Ark. 629, 970 S.W.2d 280 (1998). Moreover, the decision to recuse is within the trial court's discretion and will not be reversed absent abuse. Trimble v. State, 336 Ark. 437, 986 S.W.2d 392 (1999). The question of bias is usually confined to the conscience of the judge. Black v. Van Steenwyk, supra; Dolphin v. Wilson, 328 Ark. 1, 942 S.W.2d 815 (1997). An abuse of discretion can be shown by proving bias or prejudice. Massongill v. County of Scott, 337 Ark. 281, 991 S.W.2d 105 (1999); Trimble v. State, supra. To decide whether there was an abuse of discretion, we review the record to see if any prejudice or bias was exhibited. Black v. Van Steenwyk, supra; Dolphin v. Wilson, supra. There is a duty not to recuse where no prejudice exists. Massongill v. County of Scott, supra; U.S. Term Limits, Inc. v. Hill, 315 Ark. 685, 870 S.W.2d 383 (1994); Carton v. Missouri Pac. R.R., 315 Ark. 5, 865 S.W.2d 635 (1993). The party seeking disqualification bears the burden of proving bias or prejudice. Trimble v. State, supra; Dolphin v. Wilson, supra; Noland v. Noland, 326 Ark. 617, 932 S.W.2d 341 (1996).
In the instant case, following remand the circuit judge appeared to hear the evidence presented in an impartial manner, giving each side full opportunity to address the issues. The judge acknowledged that Mr. Wilson was an officer of the court and spoke positively of his achievements. While the judge's use of the word "umbrage" in its written order denying recusal may not have been the best choice of words, it in no wise was prejudicial or exhibited bias. Moreover, Mr. Wilson cites no example of bias at the hearing, and thus he demonstrates no prejudice. In the absence of a showing of prejudice, we hold that the circuit judge did not abuse his discretion in declining to recuse.
II. The Sanction
As already noted, Mr. Wilson violated Rule 8.4(b), which is the commission of a "criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." His conduct constitutes serious misconduct which warrants either terminating or restricting his law license for a period of time under Section 7 of the Procedures Regulating Professional Conduct ("Procedures"). Under the American Bar Association Standards for Imposing Lawyer Sanctions, the distinction in the propriety of assessing disbarment versus suspension is drawn as follows:
5.11 Disbarment is generally appropriate when:
*232 (a) a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or
(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.
5.12 Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.
Compendium of Professional Responsibility Rules and Standards §§ 5.11, 5.12 (1999 Ed.).
It would seem at first blush that Mr. Wilson's criminal conduct militates more in favor of disbarment than suspension. But as already noted, in Wilson IV this court made it clear that automatic disbarment was not appropriate and that aggravating and mitigating circumstances must be looked to in deciding the proper sanction. Those circumstances are:
Aggravating Factors:
(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceedings by intentionally failing to comply with [the] rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge [the] wrongful nature of [the] conduct;
(h) vulnerability of [the] victim;
(i) substantial experience in the practice of law;
(j) indifference to making restitution;
(k) illegal conduct, including that involving the use of controlled substances.
Mitigating Factors
(a) absence of a prior disciplinary record;
(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;
(d) timely good faith effort to make restitution or to rectify [the] consequences of [the] misconduct;
(e) full and free disclosure to [the] disciplinary board or cooperative attitude towards [the] proceedings;
(f) inexperience in the practice of law;
(g) character or reputation;
(h) physical disability;
(i) mental disability or chemical dependency including alcoholism or drug abuse when;
(1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
(2) the chemical dependency or mental disability caused the misconduct;
(3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.
(j) delay in [the] disciplinary proceedings;
(k) impositions of other penalties or sanctions;
(l) remorse;
*233 (m) remoteness of prior offenses.
Model Standards for Imposing Lawyer Sanctions §§ 9.22 and 9.32 (1992).
Of the mitigating factors, the following appear relevant to this case:
 absence of a prior disciplinary record;
 reputation;
 delay in [the] disciplinary proceedings;
 imposition of other penalties or sanctions.
Mr. Wilson had ample letters of recommendation from community leaders. He has also engaged in public service since his misdemeanor convictions both in terms of public interest litigation and service in the Arkansas General Assembly. But two circumstances appear particularly pertinentdelay in the disciplinary proceedings and imposition of other penalties and sanctions.
The conduct of Mr. Wilson at issue in this appeal occurred almost twenty years ago. Ten years ago, he admitted his guilt to five misdemeanors based on a plea agreement and served time in prison. He stated in his testimony before the circuit judge in the instant case that he lost his farm as part of the punishment. Since 1985, with the exception of a few months, he has been suspended from practicing law in the federal courts. He was disbarred from practice in the state courts following the decision of the circuit judge prior to the appeal in Wilson IV for more than two years. These formal disciplinary proceedings have been going on now for ten years. There is no doubt that Wilson has already experienced significant penalties and sanctions for his conduct.
We note in addition that certain aggravating factors are absent in this case. Mr. Wilson's misdemeanor pleas were for conduct perpetrated against the federal government and not for conduct against a vulnerable and susceptible client. While this does not excuse Mr. Wilson's conduct, it eliminates an aggravator that might have otherwise been present. Nor do we glean from the record that Mr. Wilson engaged in a bad-faith obstruction of the disciplinary proceedings or that he engaged in deceptive practices before the Committee.
Taking all of these circumstances under consideration, the circuit judge was correct that disbarment was not an appropriate sanction. However, any decision along these lines must be measured against the yardstick of Neal v. Hollingsworth, 338 Ark. 251, 992 S.W.2d 771 (1999), because in that case we found disbarment to be the appropriate sanction after considering for the first time the American Bar Association standards for mitigators and aggravators. In the Hollingsworth case, the embezzlement of money from a client was involved. There are many aspects in this case that distinguish it from Hollingsworth. In Hollingsworth, the circuit judge found (and we agreed) that Hollingsworth had knowingly diverted funds for his own use from an estate whose primary beneficiary was a vulnerable widow (an aggravating circumstance) and then had tried to cover up the diversion of funds by not answering his client's questions or giving her the requested accountings. This conduct occurred more recently than Mr. Wilson's and for a significant period of time more than five yearsfrom 1989 to 1994. The result of this conduct was a finding by the circuit judge that Hollingsworth had committed eight rule violations:
Rule 1.1 Competence
Rule 1.3 Diligence
Rule 1.4(a) Communication
Rule 1.5(a)(b) Fees
Rule 1.15(a)(b)(c) Safekeeping Property
Rule 3.2 Expediting Litigation
Rule 4.1 Truthfulness in Statements to Others
Rule 8.4(c)(d) Misconduct
In the case before us, there was also a pattern of misconduct but for a shorter period of time, and it involved a victim (the government) that was not a vulnerable *234 client. In addition, Mr. Hollingsworth termed his misconduct a "technicality" while Mr. Wilson pled guilty to his wrongdoing. There is also the point that Mr. Wilson's public interest litigation and public service in the General Assembly occurred after his misconduct. Mr. Hollingsworth's misconduct occurred after much of his public service and after he had been a licensed attorney for more than nineteen years.
The fact that Mr. Hollingsworth was never charged with embezzlement and Mr. Wilson was charged with a crime is not a critical distinction. The findings of the circuit judge in Hollingsworth equate to a finding of embezzlement and a coverup, though Hollingsworth was never charged, perhaps due to the reluctance of the widow to bring charges. In short, the circumstances surrounding Mr. Hollingsworth's conduct, which amounted to stealing from an estate for more than five years, where his client, the widow, was the executrix and primary beneficiary, appear more dire and pronounced than Mr. Wilson's wrongdoing against the government for a shorter period of time.
The remaining issue is whether Mr. Wilson should be suspended for a period of years or disbarred for a period of years. This court does have precedent for meting out a disbarment sanction for a fixed term of years. See Weems v. Supreme Court Committee on Professional Conduct, 257 Ark. 673, 523 S.W.2d 900 (1975) (disbarment assessed by circuit judge reduced by this court to a term of three years). Though Mr. Wilson equates a five-year suspension to disbarment in his brief on appeal, the distinction between suspension and disbarment is obviously a critical one. Following a suspension for a term of years, an attorney may apply for reinstatement under Section 7K of our Procedures, which entails little more than showing the Committee that his license fees are current and that he did not practice law during the period of suspension. Following disbarment, however, an application for readmission to the bar made to the Board of Law Examiners as well as approval by this court are required, and that is much more onerous. See Procedures § 7L. This is comparable in effect to an initial application to practice law and entails a character and fitness evaluation by the Board of Law Examiners and even, in some cases, taking the bar exam again.
Additionally, when a disbarment is based on dishonesty, readmission is an impossibility. Section 7L(2)(c) of the Procedures provides that readmission shall not be allowed if:
(c) Any of the grounds found to be the basis of a disbarment or any grounds presented in a voluntary surrender of law license are of the character and nature of conduct that reflects adversely on the individual's honesty or trustworthiness, whether or not the conviction of any criminal offense occurred.
As already noted, this court affirmed the fact that Mr. Wilson's conduct involved dishonesty and reflected adversely on his fitness to practice law in Wilson IV. Thus, our procedures slam the door on any potential readmission by Mr. Wilson, even if his disbarment is only for a term of years.
Finally, it is necessary to address two other opinions in this case. Justice Smith agrees that disbarment is not an appropriate sanction. He maintains, however, that our Procedures should be construed so as to limit the circuit judge and this court to a one-year suspension. That is not a correct reading of our Procedures. Under the Procedures in force in 1990, they provided that the Committee was authorized to suspend an attorney from the practice of law for one year.[2] But, a separate section of the Procedures sets forth the authority of the circuit judge as opposed to the Committee, once a disbarment action has been *235 filed in that court. If a finding is made that one or more of the Model Rules of Professional Conduct have been violated, the circuit judge in a disbarment action "shall caution, reprimand, suspend, or disbar such attorney as the evidence shall warrant." 1990 Procedures, § 5G.(2). Thus, the whole panoply of sanctions is available to a circuit judge and, concomitantly, to this court. And there is no basis for concluding that because the Committee can suspend a lawyer from the practice for up to one year, circuit judges are similarly limited when meting out sanctions in a disbarment action. Our rules are so clear on this point that there is no valid basis for invoking the canons of statutory construction, as Justice Smith has done. To do so takes a limitation on the Committee's power and impresses it on the circuit judges in disbarment proceedings, which was never contemplated by our Procedures. In sum, the circuit judge in this case had the authority to suspend Mr. Wilson from the law practice for five years.
Nor do I see that Mr. Wilson's due process rights were jeopardized by imposition of a sanction (five-year suspension) of which he contends he had no notice. Again, our Procedures clearly give circuit judges full authority to suspend as the evidence warrants in disbarment matters. This court has found a violation of an attorney's due process rights when that attorney was not notified of a specific rule violation for which he or she might have been sanctioned. See, e.g., Colvin v. Committee on Professional Conduct, 305 Ark. 239, 806 S.W.2d 385 (1991). Here, though, Mr. Wilson was fully apprised of the fact that his sanction might be disbarment. Under these facts it makes little sense to contend that the assessment of a lesser sanction which is authorized by our Procedures violated his right to due process.
Finally, there is the dissenting opinion of the chief justice which favors total disbarment. The dissent falls into the same trap as the circuit judge in Wilson IV and fails to consider the ABA standards for aggravating and mitigating circumstances. In particular, the dissent discounts the aggravating circumstances of a vulnerable client and a coverup, which were present in Hollingsworth but not in the instant case. There is, too, the point that Mr. Hollingsworth was found to have violated eight of our Model Rules for more than five years. Mr. Wilson was found to have violated one. Of course, it is vastly easier to look at Mr. Wilson's conduct and say that dishonesty was involved twenty years ago and, thus, permanent disbarment is warranted, without examining the mitigating and aggravating factors in this case. That, however, is contrary to what we held in Wilson IV, where we stated that the circuit judge, and by necessity this court as well, must look to all the circumstances of each case.
GLAZE and CORBIN, JJ., not participating.
ARNOLD, C.J., THORNTON and SMITH, JJ., and Special Justices JAMES E. BURNETT and JAY F. SHELL concur in part and dissent in part.
W.H. "DUB" ARNOLD, Chief Justice, concurring in part; dissenting in part.
I respectfully disagree with my fellow justices that disbarment is not the appropriate sanction in this case. The appropriate sanction is not only important to the appellant in this case, Mr. Wilson, but it is ultimately important to the entire legal profession, in that this court has previously held that appellant's conduct constituted a violation of Rule 8.4(b) of the Model Rules of Profession Conduct, which regards the commission of a "criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." See Wilson v. Neal, 332 Ark. 148, 964 S.W.2d 199 (1998) (noted as Wilson IV by my colleagues). Mr. Wilson was convicted of five counts of "knowingly" converting money and property that belonged to the federal government in violation of the law. This court agreed with *236 the trial court that these convictions, even though they were misdemeanors, involved dishonesty and a breach of trust, and seriously undermined "the confidence of the public in our legal profession." Id. at 161, 964 S.W.2d at 205-06, (quoting In re Lee, 305 Ark. 196, 806 S.W.2d 382 (1991)).
The power to regulate and define the practice of law is a prerogative of the judicial department as one of the divisions of government. See Neal v. Wilson, 316 Ark. 588, 873 S.W.2d 552 (1994); Weems v. Supreme Ct. Comm. on Prof. Conduct, 257 Ark. 673, 523 S.W.2d 900 (1975), reh'g denied, 257 Ark. 685-A, 523 S.W.2d 900 (1975). Our responsibility is set forth explicitly in Amendment 28 to the Arkansas Constitution, which states: "The Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys at law." This court accepted the responsibility assigned to it by the Constitution and set the standards high in order to protect the public, as well as the integrity of the legal profession. We have held that truthfulness, honesty, and candor are "necessary characteristics for establishing a candidate's good moral character and hence his or her fitness to practice law." Shochet v. Arkansas Board of Law Examiners, 335 Ark. 176, 187, 979 S.W.2d 888, 894 (1998) (quoting Application of Jenkins, 467 A.2d at 1088).
Each year, law school graduates who have passed the bar examination appear before the Supreme Court to take the oath of office. A portion of that oath states: "I will, to the best of my ability, abide by the Model Rules of Professional Conduct and any other standards of ethics proclaimed by the courts...." These same graduates are reminded that they have become a part of the legal system and that they must be good stewards for the profession. What example is set when lawyers violate the rules, and the proper sanction is not imposed? Lawyer professionalism will be taking a tremendous toll on public trust and confidence.
Our court has demanded of the lawyers of this State high standards; and, as late at June of last year, in Neal v. Hollingsworth, 338 Ark. 251, 992 S.W.2d 771 (1999), this court held that a violation of trust and dishonesty would not be tolerated. We said in Hollingsworth:
This type of misconduct can only be characterized as serious, substantial, and egregious. Under these circumstances, we hold that the trial court clearly erred when it imposed a mere six-month suspension from the practice of law. The only appropriate sanction commensurate with Mr. Hollingsworth's actions is disbarment.
Id. at 276, 992 S.W.2d at 784.
In the case now before us, my colleagues admit that when applying appellant's conduct to the American Bar Association Standards for Imposing Lawyer Sanctions, disbarment clearly appears to be the appropriate sanction, based on appellant's actions. In light of our decision in Hollingsworth, they attempt to distinguish and minimize Mr. Wilson's conduct based, primarily, upon the fact that the victim in Wilson's case was merely the government, and not a client, as was the case in Hollingsworth. I find that distinction to be rather offensive, given that the government is the "people"; and those "people" happen to be you and me.
It is hard for me to believe that my fellow justices could conclude that Mr. Wilson's conversion of government property, among other crimes, warrants any sanction less than complete disbarmentparticularly in light of our decision in Hollingsworth. I might also point out that Mr. Hollingsworth, unlike Mr. Wilson, was neither charged, convicted, nor served time in the penitentiary for his actions. It is clear that Hollingsworth is, indeed, distinguishable from Wilson; however, in my opinion, Wilson is more egregious than Hollingsworth.
Finally, I must take exception to my fellow justices' logic regarding the reason disbarment for a term of years would be an inappropriate sanction. They state that *237 if this court were to disbar the appellant for a term of years, rather than a lifetime disbarment, that fixed-term disbarment would be tantamount to a complete disbarment, since appellant would have to apply for reinstatement under Section 7K of our Procedures and would never be readmitted because the very basis of his disbarment is conduct involving dishonesty. What? This analysis is illogical.
In other words, it is apparently the opinion of my fellow justices that the appellant should not be disbarred for a term of years, even though his conduct warrants disbarment, because that very conduct would keep him from ever having been admitted to the bar in the first place. What better argument for complete disbarment than that very rationale?let us not disbar him, because based on his conduct, if we do so, he could never be readmitted to the bar. That is ludicrous and is a pathetic reason for imposing a lighter sanction. I believe my fellow justices have lost sight of the fact that it is a privilege to hold an attorney's license, not a God-given right.
In my opinion, the decision in this case in no way advances the public trust and confidence in our profession. I believe a dangerous precedent is being set, moving the standard which guides the actions of attorneys to a considerably lower level. I, therefore, respectfully dissent.
Special Associate Justice JAY F. SHELL joins.
LAVENSKI R. SMITH, Justice, concurring in part; dissenting in part.
I concur with the court that sanctions are warranted. The practice of law is a high privilege, and those who receive that privilege must adhere to the standards of conduct prescribed for the profession. Failure to do so not only warrants but demands appropriate sanction. Two justices are of the view that the circuit court could impose a five-year suspension under the rules in effect in 1990. I disagree and would hold that the better reading of the applicable rules would limit the suspension sanction to one year. Moreover, I believe the preferred policy would be to not favor long-term suspensions. The majority dismisses the need to apply the construction canons to interpret our rules because of their presumed clarity. With respect to sanctions, our rules are not so clear as they suppose when the potential exists for imposition of suspensions for unlimited and perhaps arbitrary terms. The public is not best protected from unscrupulous attorneys by having them remain out of the practice of law for a decade, then potentially return to practice having been apart from the profession for such an extended period. The majority cites no case under the modern rules imposing a five-year or greater suspension from the practice law. Surely, outright disbarment would be a better policy for the public's good as compared to long-term suspension. Here, we have the interesting circumstance where a disbarred attorney could seek reinstatement sooner than an attorney suspended for five years. See, In the Matter of Wayne R. Williams, 265 Ark. 480, 592 S.W.2d 438 (1979). Williams surrendered his license rather than face almost certain disbarment for grossly unethical conduct. Three years later, he petitioned for and received reinstatement to the practice of law.
A closer examination of the applicable rules is in order. Section 7 of the applicable 1990 procedures is entitled "Sanctions." Paragraph A is entitled, "Sanctions Authorized." Under this section, the Committee is authorized to warn, issue a caution or reprimand, suspend the attorney for one year, or file a disbarment action in circuit court. In this case, the Committee filed an action in circuit court. Once the Committee files a disbarment action, if sanctions are required the sanctions will be imposed by the trial court in accordance with a different section, specifically Section 5(G)(2). Wilson IV, supra. Section 5(G)(2) provides that if the circuit court finds the attorney has violated the "Model Rules, he shall caution, reprimand, suspend, or disbar such attorney as the evidence may warrant."
*238 It is evident that the rules contain two sections regarding sanctions, one describing those available to the Committee, and the other describing those available to the trial court. The list in both sections contains the same categories of sanctions with the exception of the trial court's list, which includes the additional sanction of disbarment.
In Section 7, the Committee's authority to suspend was expressly limited to one year.[3] Section 5(G)(2) dealing with the trial court contains no such limitation. It is indeed proper to ask whether the suspension authority given the trial court in Section 5(G)(2) describing the committee's procedure exceeds that expressly outlined in Section 7. Section 5 of the Committee's Procedure Rules, appearing prior to Section 7 in the rules, specifically addresses the "Procedure" to be followed by the Committee in pursuit of its obligation to investigate and sanction violations. In subsections designated (A) through (H), Section 5 outlines the Committee's general investigatory authority (A), the notice to be given the attorney (B), the response time (C), the manner of voting by committee (D and E), committee hearing procedures (F), the committee's obligation to institute disbarment (G), and the attorney's appeal rights (H). The language addressing the Circuit Court's authority to sanction appears in (G)(2) and lists four possible sanctions actionscaution, reprimand, suspension, or disbarment. The actions are not defined. Nor are they expressly distinguished from the Committee's sanction list in Subsection 7(A).
While it is clear that the circuit court's responsibility to sanction attorneys in disbarment actions is listed separately in the rules and can include disbarment, it is not as clear whether the court's suspension of an attorney from the practice of law can exceed that stated in the Committee's sanction list in Subsection 7(A). Arguably, in that the circuit court has separate sanction authority stated in 5(G)(2), it could suspend an attorney from the practice for any period of time. Perhaps, the court could suspend an attorney for ten years or even twenty years. We construe our rules using the same means, including canons of construction, as are used to construe statutes. Gannett River States Pub. Co. v. Ark. Jud. Discip. & Disab. Comm., 304 Ark. 244, 801 S.W.2d 292 (1990). The fundamental principle used in considering the meaning of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning. Munson v. State, 331 Ark. 41, 959 S.W.2d 391 (1998).
However, where the applicable statute is penal in nature, i.e., imposes a penalty or punishes conduct, we have long held that it is to be strictly construed. Hughes v. State, 6 Ark. 131 (1845). Moreover, we have held that in construing such statutes, all doubts are to be resolved in the favor of the defendant and nothing is taken as intended which is not clearly expressed. State v. Lewis, 335 Ark. 188, 979 S.W.2d 894 (1998). Construing the rules strictly, I would hold that the trial court's suspension of Wilson from the practice of law could not exceed one year. Our rules have been made much more explicit with respect to the imposition of suspensions and other sanctions by our revised rules adopted January, 8, 1998. The sanctions are now specifically defined and explicit guidelines are given for the imposition of the appropriate sanction. I would affirm the trial court's suspension but modify it consistent with a strict reading of the rules then in effect.
THORNTON, J., and Special Justice JIM BURNETT join.
NOTES
[1] According to Wilson I, the amount borrowed by Mr. Wilson from the FmHA in 1981 and 1982 was approximately $775,230. A federal grand jury indicted him based on his disposition of the proceeds from multiple crop sales and the transfer of funds from a joint bank account with the FmHA to his law firm account, all in an effort to avoid the FmHA lien. In 1985, he was tried on various felony counts and found guilty of one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371, forty counts of knowingly disposing of property mortgaged to a government agency in violation of 18 U.S.C. § 658, and seven counts of unlawfully converting government property in violation of 18 U.S.C. § 641. His judgment of conviction was reversed by the Eighth Circuit Court of Appeals due to a Batson violation at his jury trial. United States v. Wilson, 815 F.2d 52 (8th Cir. 1987). On remand to the federal district court, Mr. Wilson pled guilty to the five misdemeanors noted in this opinion.
[2] Section 7E(2) of the Procedures now in force, which were adopted by this court in 1998, authorizes the Committee to suspend a lawyer's license "not in excess of two (2) years."
[3] The amended version of this Section now in effect expanded the Committee's authority to suspend up to two years.