James A. NEAL, as Executive Director of
the Arkansas Supreme Court Committee
on Professional Conduct *v.*
Charles Dawson MATTHEWS

00-217 30 S.W.3d 92

Supreme Court of Arkansas
Opinion delivered November 9, 2000

*James A. Neal*, Executive Director, Supreme Court Committee on Professional Conduct, by: *Lynn Williams*, for appellant.

*Darrell F. Brown & Associates, P.A.*, by: *Darrell F. Brown*, for appellee.

DONALD L. CORBIN, Justice. Appellant James A. Neal, in his official capacity as Executive Director of the Arkansas Supreme Court Committee on Professional Conduct, appeals the order of the Pulaski County Circuit Court suspending Appellee Charles Dawson Matthew's license to practice law for a period of fourteen months. Mr. Neal sets forth three points for reversal: (1) that the evidence warranted disbarment; (2) that the trial court lacked the authority to order that the suspension was retroactive; and (3) that the trial court lacked the authority to reinstate Appellee's law license. Our jurisdiction of this matter is pursuant to Ark. Sup. Ct. R. 1-2(a)(5). We agree, in part, with Mr. Neal's arguments, and therefore reverse and remand this matter to the trial court.

Mr. Neal filed a disbarment complaint against Mr. Matthews in Pulaski County Circuit Court on November 4, 1996. The events leading up to the disbarment action stemmed from information uncovered in connection with the Whitewater investigation. Mr. Matthews was indicted on two felony counts, but ultimately pled guilty to two counts of Bribery of a Small Business Investment Official, a federal misdemeanor in violation of 18 U.S.C. § 215. Mr. Matthews admitted that he signed a legal opinion for David Grace and Gene Fitzhugh in an attempt to secure a small business loan for himself from David Hale. He was sentenced to twelve months' imprisonment on each count, with four months of the second count to run consecutively with the twelve months of the first count. In addition, he was sentenced to one year of supervised release and fined $7,500. He ultimately served eleven months in a federal prison camp, one month in St. Francis Halfway House, and two months of home confinement. Mr. Matthews satisfied all the conditions of his probation on April 12, 1997.

The disbarment complaint alleged that Mr. Matthews violated Rule 8.4(b) and (c) of the Model Rules of Professional Conduct ("Model Rules"), as well as Section 6(B) of the Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law ("Procedures"). On April 15, 1998, the trial court granted, in part, Mr. Neal's motion for summary judgment that the convictions involved dishonesty and breach of trust. After finding that Mr. Matthews's conduct violated Model Rule 8.4(b), the trial court ordered that a sanctions hearing be scheduled.

The sanctions hearing was delayed until October 13, 1999, due to severe injuries suffered by Mr. Matthews as the result of a car accident. During the sanction phase, Mr. Matthews presented mitigating evidence through the testimony of witnesses regarding his good moral character and fitness as an attorney. Mr. Matthews testified that no client lost money as a result of the legal opinion that he signed, and that he did not receive any type of financial gain as a result of his conduct. He also testified that he regretted his past actions. After considering the evidence, the pleadings, and the stipulation of the parties, the trial court determined that Mr. Matthews's law license should be suspended for fourteen months, with the suspension to be applied retroactively to coincide with the time Mr. Matthews served in custody. The trial court then reinstated Mr. Matthews's license to practice law effective upon the date he was released from federal custody. Mr. Neal now appeals the trial court's order.

Disbarment proceedings are neither civil nor criminal in nature but are *sui generis*, meaning "of their own kind." Procedures § 1(C); *Neal v. Hollingsworth*, 338 Ark. 251, 992 S.W.2d 771 (1999). Section 5(L)(4) of the Procedures mandates that this court review appeals from disbarment proceedings in a manner consistent with civil appeals. As disbarment proceedings are tried without a jury by the circuit court, we conduct a *de novo* review, and will not reverse the trial court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Id.*; Ark. R. Civ. P. 52(a). A finding is clearly erroneous when although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been committed. *Foundation Telecomms. v. Moe Studio, Inc.*, 341 Ark. 231, 16 S.W.3d 531 (2000); *Simmons First Bank v. Bob Callahan Servs., Inc.*, 340 Ark. 692, 13 S.W.3d 570 (2000). This court must view the evidence in a light most favorable to the appellee, resolving all inferences in favor of the appellee. *Arkansas Transit Homes, Inc. v. Aetna Life & Cas.*, 341 Ark. 317, 16 S.W.3d 545 (2000); *Ford Motor Credit Co. v. Ellison*, 334 Ark. 357, 974 S.W.2d 464 (1998). Disputed facts and determinations of the credibility of witnesses are within the province of the factfinder. *Id.*

*Appropriate Sanction*

For his first argument on appeal, Mr. Neal argues that based on the evidence, the only appropriate sanction was disbarment. Specifically, he argues that Mr. Matthews's conduct occurred because of a dishonest or selfish motive, and that it consisted of multiple offenses. Mr. Matthews responds that his conduct does not warrant disbarment as it does not involve any misappropriation of money, a key element in other disbarment actions. Further, he contends that he has suffered enough and the sanction imposed by the trial court is fitting, appropriate, and proper, and thus should be affirmed by this court.

■ ■ As previously stated, the trial court determined that Mr. Matthews violated Model Rule 8.4(b), which provides that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." We now must decide whether the fourteen-month suspension imposed by the trial court was appropriate here. With regard to whether the evidence warrants suspension or disbarment, Section 7 of the Procedures divides violations of the Model Rules into two separate categories of conduct: serious misconduct and lesser misconduct. Serious misconduct warrants a sanction terminating or restricting the lawyer's license to practice law, whereas lesser misconduct does not. *Hollingsworth*, 338 Ark. 251, 992 S.W.2d 771.Conduct will be considered serious misconduct if any of the considerations set forth in Section 7(B) of the Procedures apply. Those considerations are:

(1) The misconduct involves the misappropriation of funds;

(2) The misconduct results in or is likely to result in substantial prejudice to a client or other person;

(3) The misconduct involves dishonesty, deceit, fraud, or misrepresentation by the lawyer;

(4) The misconduct is part of a pattern of similar misconduct;

(5) The lawyer's prior record of public sanctions demonstrates a substantial disregard of the lawyer's professional duties and responsibilities; or

(6) The misconduct constitutes a "Serious Crime" as defined in these Procedures.

 Clearly, Mr. Matthews's convictions may be classified as serious misconduct. The inquiry into the appropriate sanction does not end there, however. Once the court determines that there has been a violation of the Model Rules, it must then proceed to the penalty phase during which the defendant attorney and the Committee's Executive Director are allowed to present evidence and arguments regarding any aggravating or mitigating factors, in order to assist the trial court in its determination of the appropriate sanction. *Id.* The American Bar Association's Joint Committee on Professional Standards developed a list of aggravating and mitigating factors in order to assist the trial court in making its determination of the appropriate sanction. Those factors were adopted by this court in *Wilson v. Neal*, 332 Ark. 148, 964 S.W.2d 199 (1998). They are:

Aggravating Factors:

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) a pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceedings by intentionally failing to comply with [the] rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge [the] wrongful nature of [the] conduct;

(h) vulnerability of [the] victim;

(i) substantial experience in the practice of law;

(j) indifference to making restitution;

(k) illegal conduct, including that involving the use of controlled substances;

Mitigating factors:

(a) absence of prior disciplinary record;

(b) absence of dishonest or selfish motive;

(c) personal or emotional problems;

(d) timely good faith effort to make restitution or to rectify [the] consequences of [the] misconduct;

(e) full and free disclosure to [the] disciplinary board or cooperative attitude towards [the] proceedings;

(f) inexperience in the practice of law;

(g) character or reputation;

(h) physical disability;

(i) mental disability or chemical dependency including alcoholism or drug abuse when

(1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;

(2) the chemical dependency or mental disability caused the misconduct;

(3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

(j) delay in the disciplinary proceedings;

(k) impositions of other penalties or sanctions;

(l) remorse;

(m) remoteness of prior offenses.

*Wilson*, 332 Ark. at 164, 964 S.W.2d at 207 (citing *Model Standards for Imposing Lawyer Sanctions* §§ 9.22 and 9.32 (1992)).

■ To determine whether the trial court's imposition of a fourteen-month suspension, instead of disbarment, was clearly erroneous, we review the trial court's specific findings regarding

rule violations and aggravating and mitigating factors. A review of the record reveals the presence of three aggravating factors. First, the evidence supports a finding that Mr. Matthews's actions occurred because of a dishonest or selfish motive. Mr. Matthews testified that he signed off on the legal opinion for Grace and Fitzhugh because he thought it might help himself in obtaining a small business loan. Next, there are multiple offenses involved in that Mr. Matthews pled guilty to two counts of bribery; however, it must be noted that both of those counts arose from the same transaction. Finally, Mr. Matthews has been a licensed attorney since 1964, and thus has substantial experience in the law. Indeed, Mr. Matthews testified that at the time he signed the loan opinion, he was very experienced in banking law.

The above-mentioned aggravating factors are not considered in isolation; instead, they must be weighed against the mitigating factors. Here, the mitigating factors far outweigh the aggravating factors. First, Mr. Matthews has no prior disciplinary record. Mr. Matthews also made a timely good-faith effort to make restitution or to rectify the consequences of his misconduct. The trial court specifically found that Mr. Matthews had at all times exhibited full and free disclosure to the Committee, as well as exhibited a cooperative attitude during his disbarment proceedings. Further, numerous witnesses testified on behalf of Mr. Matthews regarding his good character. Mr. Matthews has also served time in federal custody, and paid the $7,500 fine imposed on him. Finally, the trial court also found that Mr. Matthews "has demonstrated beyond a doubt that he is truly and unconditionally remorseful, contrite and penitent for his actions[.]"

This court has further determined that there are additional factors appropriate for the Committee's consideration in determining the sanction to be imposed in disciplinary cases. *See Hollingsworth*, 338 Ark. 251, 992 S.W.2d 771. While we recognize that these factors are not classified as either aggravators or mitigators, we believe they are harmonious in their objectives and their focus with the factors adopted in *Wilson*, 332 Ark. 148, 964 S.W.2d 199. *Id.* These factors, as identified by Section 7(F) of the Procedures, are:

(1) The nature and degree of the misconduct for which the lawyer is being sanctioned.

(2) The seriousness and circumstances surrounding the misconduct.

(3) The loss or damage to clients.

(4) The damage to the profession.

(5) The assurance that those who seek legal services in the future will be protected from the type of misconduct found.

(6) The profit to the lawyer.

(7) The avoidance of repetition.

(8) Whether the misconduct was deliberate, intentional or negligent.

(9) The deterrent effect on others.

(10) The maintenance of respect for the legal profession.

(11) The conduct of the lawyer during the course of the Committee action.

(12) The lawyer's prior disciplinary record, to include warnings.

(13) Matters offered by the lawyer in mitigation or extenuation except that a claim of disability or impairment resulting from the use of alcohol or drugs may not be considered unless the lawyer demonstrates that he or she is successfully pursuing in good faith a program of recovery.

A review of these additional factors also indicate that a sanction less than disbarment was appropriate here. The nature and degree of Mr. Matthews's conduct, while egregious, does not rise to the level of those cases where disbarment has been appropriate. Mr. Matthews's misdemeanor convictions involved an amount of money of less than $100. The profit Mr. Matthews hoped to gain was the possibility of obtaining a small business loan. The instant action does not involve an attorney absconding with a client's money, as was the situation in *Hollingsworth*, 338 Ark. 251, 992 S.W.2d 771. Moreover, Mr. Matthews testified that no one lost money as a result of his signing the legal opinion. He stated that the legal opinion was for a valid secured loan that was repaid. His conduct was criminal in that he signed the legal opinion with the knowledge that Mr. Hale was engaged in illegal activity. Mr.

Matthews also testified that on two separate occasions he attempted to notify others, including the Federal Bureau of Investigation, of what he suspected to be wrongdoing on the part of Mr. Hale.

The evidence in the instant case also indicates that future clients will be protected from this type of misconduct. Mr. Matthews testified that he is now working primarily in the field of estate planning. The trial court relied on the following facts as evidence that Mr. Matthews has been rehabilitated:

(a) Since being released from incarceration, the defendant has been and continues to be an active member of the Arkansas Bar Association and the adjunct committee of the Arkansas Lawyers for the Elderly;

(b) That since his release from the Federal Bureau of Prisons, the defendant has actively served on two (2) ad hoc committees of the Arkansas Bar Association assisting victims of two recent tornadoes which struck the State of Arkansas;

(c) The defendant continues to serve as an active member of the Probate Committee and of the Arkansas Bar Association Paralegal Committee;

(d) Since his release from the Federal Bureau of Prisons, the defendant became the senior legal advisor to Henry Abts, III, who is the president and founder of an organization relating to living trusts and settling estates;

(e) The defendant has regularly attended the Grace Community Church of Little Rock, where he not only teaches, but provides counsel and legal assistance to the church and its members, when requested; and

(f) That the defendant has provided pro bono services to low income residents, particularly in the Rixey area, in their venture to obtain a sewer improvement district, resulting in great benefits to these citizens of the State of Arkansas and the City of North Little Rock.

A final factor for this court to take into consideration is our recent holding in *Wilson v. Neal*, 341 Ark. 282, 16 S.W.3d 228 (2000), where this court affirmed a sanction less than disbarment for violations of the Model Rules stemming from a plea to five counts of federal misdemeanors. While we are mindful that the plurality opinion in *Wilson* has no precedential effect, we must consider the practical effects of that opinion, namely, that an attorney convicted of federal offenses received a sanction less than disbarment. It would certainly be unfair to now hold that an attorney similarly convicted is subject to a higher standard. After reviewing

both the mitigating and aggravating factors present in this case, as well as taking into consideration this court's recent holding in *Wilson*, we are not convinced that the trial court was clearly erroneous in imposing a sanction less than disbarment.

With that said, we must consider whether the fourteen months imposed by the trial court is an appropriate amount of time for the suspension. We believe it is not. Mr. Matthews pled guilty to two federal misdemeanors and served fourteen months in federal custody. Because his actions have damaged the profession, we must be certain that any sanction imposed on him is not only commensurate with his offenses, but will also serve as a deterrent for other members of the legal community. With that in mind, we believe that a five-year suspension will serve both the purpose of punishing Mr. Matthews and deterring other attorneys from engaging in similar conduct.

*Retroactivity of Suspension*

Having decided that a five-year suspension is appropriate, we now must turn to the issue of whether it was appropriate for the trial court to order Mr. Matthews's suspension to run retroactively. Procedure 5(K)(2) authorizes the trial court to impose one of four sanctions, including suspension. There is nothing in the Procedures authorizing the trial court to run the suspension retroactively.[1] In so ruling, the trial court effectively rendered Mr. Matthews's suspension meaningless. Moreover, the requirements for an attorney suspended set out in the Procedures cannot be met when the suspension is imposed retroactively. *See* Procedures § 7(I). Accordingly, Mr. Matthews's suspension is to run from the date of this mandate.

Having determined that the appropriate sanction for Mr. Matthews's violation of Rule 8.4(b) is a five-year suspension, it is not necessary for us to consider Appellant's argument that the trial court

---

[1] The present situation is distinguishable from the one in *Wilson*, 341 Ark. 282, 16 S.W.3d 228, where Mr. Wilson was given credit for the time he was precluded from practicing law. There, Mr. Wilson was disbarred after the trial court erroneously determined that disbarment was mandatory under Section 6(B) of the Procedures. We ultimately reversed the trial court's order of disbarment, and therefore, Mr. Wilson was entitled to a credit for the time he was improperly disbarred from practicing law.

lacked authority to reinstate Mr. Matthews's license. We reverse and remand this matter to the trial court for entry of an order consistent with the foregoing opinion.

ARNOLD, C.J., and SMITH, J., dissent.

GLAZE, J., not participating.

W.H. "DUB" ARNOLD, Chief Justice, dissenting. I respectfully disagree with my fellow justices that disbarment is not the appropriate sanction in this case. As I noted in my dissent in *Wilson v. Neal*, 341 Ark. 282, 16 S.W.3d 228 (2000), the appropriate sanction is not only important to the appellant in this case, but it is ultimately important to the entire legal profession, in that appellant's conduct constitued a violation of Rule 8.4(b) of the Model Rules of Professional Conduct, which regards the commission of a "criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Mr. Matthews was indicted on two felony counts, but ultimately pled guilty to two counts of Bribery of a Small Business Investment Official, a federal misdemeanor in violation of 18 U.S.C. § 215. He ultimately served eleven months in a federal prison, one month in St. Francis Halfway House, and two months of home confinement.

The majority agreed with the trial court that these convictions, even though they were misdemeanors, involved dishonest or selfish motives and constituted serious misconduct. However, in light of the effect of the *Wilson v. Neal* case, *supra,* wherein Mr. Wilson was merely suspended from the practice of law for five years after defrauding the federal government of a substantial amount of money, the majority has determined that it would be unfair to now hold an attorney similarly convicted to a higher standard than Mr. Wilson. Therefore, the majority has determined that the fair thing to do where Mr. Matthews is concerned is to, likewise, suspend *him* from the practice of law for five years. I find this troubling. In an attempt to now be "fair" to all attorneys "similarly convicted, "(*i.e.,* those who have served time in a federal prison for crimes, albeit misdemeanors, involving dishonesty), this Court is now in effect setting a standard of five-year suspensions as the appropriate sanction.

For all of the reasons I articulated in the *Wilson* case, particularly the fact that practicing law is a privilege rather than a right, I

believe a dangerous precedent is being set by this Court, moving the standard which guides the actions of attorneys to a considerably lower level. In my opinion, the decision in this case in no way advances public trust and confidence in our profession; in fact, this decision, along with the *Wilson* case, further diminishes it. I, therefore, must respectfully dissent.

SMITH, J., joins.