Mark Steven CAMBIANO *v.* Stark LIGON, as
Executive Director of the Supreme Court
Committee on Professional Conduct

00-1297                                    44 S.W.3d 719

Supreme Court of Arkansas
Opinion delivered May 31, 2001

*Jeff Rosenzweig*, for appellant.

*Stark Ligon*, Executive Director of the Arkansas Supreme Court Committee on Professional Conduct, by: *Lynn Williams*, Staff Litigation Attorney, for appellee.

W.H. "DUB" ARNOLD, Chief Justice. Appellant, Mark Steven Cambiano, brings the instant appeal challenging the Conway County Circuit Court's order disbarring him from the practice of law. Our jurisdiction is authorized pursuant to Ark. R. Sup. Ct. 1-2(a)(5) (2000). Prior to his disbarment, Cambiano pleaded guilty on June 29, 1998, in the United States District Court to one count of aiding and abetting the causing of a financial institution to file a false currency-transaction report, a federal Class D felony. While representing a client, Willard Burnett, appellant knowingly made false statements of material fact and failed to disclose material facts to the First National Bank in Morrilton, Arkansas, in order to advance Burnett's interests. Specifically, appellant knowingly and wilfully withheld relevant information from the bank as to the source of a $62,000.00 deposit made by Cambiano. As a result of Cambiano's representations, the bank reported to the IRS that the entire deposit was appellant's money. However, almost half of the deposit actually belonged to Burnett, against whom the Morrilton Security Bank held an outstanding judgment. Notably,

Cambiano's law partner had represented Burnett in Morrilton Security Bank's collection action against Burnett.

As a result of his plea to a felony offense, Cambiano was sentenced to three years' probation, and the remaining thirty counts pending against him[1] were dismissed. Approximately one month later, the Supreme Court Committee on Professional Conduct issued an interim suspension of Cambiano's license and initiated a disbarment action in circuit court. Pursuant to Section 6B of the Procedures of the Arkansas Supreme Court Regulating Conduct of Attorneys at Law, the Committee sought appellant's disbarment as a result of his felony conviction for aiding and abetting the causing of a financial institution to file a false currency-transaction report, in violation of 31 U.S.C. §§ 5113 and 5324(a)(4), 31 C.F.R. 103.11 and 18 U.S.C. § 2. The Committee alleged that appellant's conviction of a "serious crime" as defined in Section 1(E)(8) of the Procedures, warranted his disbarment. In particular, the Committee asserted that Cambiano's criminal acts reflected adversely on his honesty, trustworthiness, and fitness as a lawyer, in violation of the Model Rules of Professional Conduct.

The circuit court agreed and issued an order disbarring appellant on August 9, 2000. From that decision comes the instant appeal. Cambiano raises two points in support of reversal. First, he contends that the circuit court's decision to disbar him is clearly erroneous. Second, he insists that the trial court erred by denying his motion to compel discovery and by refusing to consider evidence of other attorneys' misconduct in determining his sanction. On cross-appeal, the Committee assigns as error the circuit court's finding that during the pendency of the appeal, Cambiano's status was as a disbarred, rather than a suspended, attorney. In light of the applicable factors and case law, we affirm the circuit court's order of disbarment. We also affirm the trial court in all other respects and on cross-appeal.

## I. Disbarment

We have held that disbarment proceedings are neither civil nor criminal in nature but are *sui generis* or "of their own kind." Procedures § 1(C); *Neal v. Hollingsworth*, 338 Ark. 251, 992

---

[1] The thirty-one count indictment included multiple counts of money laundering and the causing of a financial institution to file false currency-transaction reports.

S.W.2d 771 (1999). On appeal from a circuit court's order of disbarment, the supreme court reviews the matter *de novo* on the record and will not reverse the trial court's findings unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Cambiano v. Neal*, 342 Ark. 691, 30 S.W.3d 716 (2000).

■ ■ According to Model Rule 8.4, an attorney engages in professional misconduct if he (1) commits a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, (2) engages in conduct involving dishonesty, fraud, deceit, or misrepresentation, or (3) engages in conduct that is prejudicial to the administration of justice. In making the sanction determination, we have stated that disbarment is generally appropriate when:

> (a) a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or (b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously or adversely reflects on the lawyer's fitness to practice.

*Wilson v. Neal*, 341 Ark. 282, 16 S.W.3d 228 (2000), *cert. denied*, 121 S. Ct. 1355 (2001) (citing American Bar Association Standards for Imposing Lawyer Sanctions, Section 5.11).

■ ■ We adopted the American Bar Association's Model Standards for Imposing Lawyer Sanctions in *Wilson v. Neal*, 332 Ark. 148, 964 S.W.2d 199 (1998). In particular, the standards set forth the following list of aggravating and mitigating factors that are useful in a court's determination of an appropriate sanction:

Aggravating Factors:

(a)   prior disciplinary offenses;
(b)   dishonest or selfish motive;
(c)   a pattern of misconduct;
(d)   multiple offenses;

(e)  bad faith obstruction of the disciplinary proceedings by intentionally failing to comply with [the] rules or orders of the disciplinary agency;

(f)  submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g)  refusal to acknowledge [the] wrongful nature of [the] conduct;

(h)  vulnerability of [the] victim;

(i)  substantial experience in the practice of law;

(j)  indifference to making restitution;

(k)  illegal conduct, including that involving the use of controlled substances.

Mitigating Factors:

(a)  absence of a prior disciplinary record;

(b)  absence of a dishonest or selfish motive;

(c)  personal or emotional problems;

(d)  timely good faith effort to make restitution or to rectify [the] consequences of [the] misconduct;

(e)  full and free disclosure to [the] disciplinary board or cooperative attitude towards [the] proceedings;

(f)  inexperience in the practice of law;

(g)  character or reputation;

(h)  physical disability;

(i)  mental disability or chemical dependency including alcoholism or drug abuse when

    (1)  there is medical evidence that the respondent is affected by a chemical dependency or mental disability;

    (2)  the chemical dependency or mental disability caused the misconduct;

    (3)  the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

    (4)  the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

(j)  delay in [the] disciplinary proceedings;

(k)  impositions of other penalties or sanctions;

(l)  remorse;

(m)  remoteness of prior offenses.

Model Standards for Imposing Lawyer Sanctions §§ 9.22 and 9.32 (1992).

Further, Section 7(F) of the Procedures enumerates the factors to be considered by the Committee in imposing sanctions. In particular, the Committee must consider:

(1) The nature and degree of the misconduct for which the lawyer is being sanctioned.

(2) The seriousness and circumstances surrounding the misconduct.

(3) The loss or damage to clients.

(4) The damage to the profession.

(5) The assurance that those who seek legal services in the future will be protected from the type of misconduct found.

(6) The profit to the lawyer.

(7) The avoidance of repetition.

(8) Whether the misconduct was deliberate, intentional or negligent.

(9) The deterrent effect on others.

(10) The maintenance of respect for the legal profession.

(11) The conduct of the lawyer during the course of the Committee action.

(12) The lawyer's prior disciplinary record, to include warnings.

(13) Matters offered by the lawyer in mitigation or extenuation except that a claim of disability or impairment resulting from the use of alcohol or drugs may not be considered unless the lawyer demonstrates that he or she is successfully pursuing in good faith a program of recovery.

Although these factors are not classified as aggravating or mitigating circumstances, they are harmonious in their objectives and focus with the factors this court adopted in *Wilson*. *See Hollingsworth*, 338 Ark. at 265, 992 S.W.2d at 778.

In the instant case, the circuit court applied the appropriate factors. Notably, appellant does not dispute many of the trial court's findings of aggravators, including his prior disciplinary offense for failing to file an appeal from municipal to circuit court. The parties also agreed that Cambiano's experience in the law was substantial as he began practicing law in 1980 and described his interest in criminal law as "intense." Moreover, appellant pleaded guilty to a felony

offense in violation of a federal statute that was designed to thwart a drug dealer's access to ill-gained profits. Indeed, the Supreme Court explained that Congress enacted the Currency and Foreign Transactions Reporting Act (Bank Secrecy Act) "in response to increasing use of banks and other institutions as financial intermediaries by persons engaged in criminal activity. The Act imposes a variety of reporting requirements on individuals and institutions regarding foreign and domestic financial transactions. See 31 U.S.C. Sections 5311-5325." *United States v. Ratzlaf,* 510 U.S. 135 (1994).

Here, the Committee alleged that Cambiano was aware that his client, Burnett, was a drug dealer, although Cambiano denied any such knowledge. Regarding the Section 7(F) factors, the court found that Cambiano's misconduct was felonious and serious, and carried a potential sentence of up to five years in prison and a $250,000 fine. Appellant further conceded that his conduct damaged the legal profession.

However, the parties disagreed as to several factors. First, Cambiano suggests that the court's finding of a dishonest motive was erroneous because he explained that his conduct was intended to protect his client's estate from a judgment creditor, the bank. Appellant maintained that his action, which resulted in a felony conviction, was merely a technical violation or a regulatory offense. Even so, appellant permitted the false, dishonest answer regarding the source of funds in the bank deposit to be inaccurately submitted to the bank and subsequently reported to the IRS. In fact, the court interpreted Cambiano's explanation as further evidence of his refusal to acknowledge the wrongful nature of his conduct and a lack of remorse. Ultimately, the trial court also disagreed with appellant's assessment that the ultimate victim, the government, was not a vulnerable victim.

■ ■ Although the parties do not dispute the existence of several mitigators, including the remoteness of appellant's 1998 warning, Cambiano objects to the court's failure to find the existence of additional mitigators. Significantly, the lawyer bears the burden of proof to present mitigating evidence. Here, we cannot say that the trial court erred when appellant presented no evidence that he cooperated with the disciplinary authorities. Moreover, the trial court was unpersuaded by Cambiano's evidence of character and reputation, and it was in a superior position to consider this evidence. Other than the natural consequences and penalties of his action, Cambiano failed to point to any other penalties that he suffered. In fact, he paid no fine or restitution and received only

three years' probation. Appellant also offers scant support for his argument that the trial court erred by finding that remorse was not a mitigator.

■ The trial court's finding that appellant's conduct was deliberate, intentional, or negligent, is borne out by Cambiano's plea that he "knowingly and willfully" committed the felony. Although appellant claims that disbarment would not act as a deterrent, the trial court clearly disagreed. Rather, the court concluded that appellant's disbarment would maintain respect for the legal profession. Finally, the court found that appellant offered no matters in mitigation or extenuation of his conduct. After reviewing the applicable factors, we cannot say that the trial court was clearly erroneous. Accordingly, we agree that disbarment was the appropriate sanction in the instant case.

Our case law also supports this holding. In *Neal v. Hollingsworth*, 338 Ark. 251, 992 S.W.2d 771 (1999), we determined that disbarment was the proper sanction when attorney Hollingsworth knowingly diverted more than $100,000.00 from his client's funds to his own use and then attempted to postpone discovery of his misconduct by failing to account to the probate court and by stonewalling his client's requests for an accounting. *See also In re Hollingsworth*, 339 Ark. Appx. 525, 4 S.W.3d 492 (1999). We acknowledged that Mr. Hollingsworth's actions of misusing and misappropriating funds from his client's estate clearly came within four out of six considerations for "serious misconduct" under Section 7(B) of the Procedures.

Most recently, in *Neal v. Matthews*, 342 Ark. 566, 30 S.W.3d 92 (2000), we considered the merits of a disbarment action arising from Matthews's conviction for a federal misdemeanor. As a result of his plea to two counts of bribery of a small business investment official, Matthews was sentenced to twelve months' imprisonment on each count, with four months of the second count to run consecutively with the twelve months of the first count. Matthews was also sentenced to one year of supervised release and fined $7,500.00. Ultimately, he served eleven months in federal prison, one month in a halfway house, and two months of home confinement.

However, in the appeal of Matthews's disbarment, we determined that a review of the factors indicated that a sanction less than disbarment was appropriate, and we reduced the sanction to a five-year suspension. Significantly, we distinguished the case from our

decision in *Hollingsworth*, where an attorney absconded with his client's money. The dishonest conduct in *Matthews* was not an act involving a client or the practice of law but arose from an attorney's self-interest to obtain a small business loan for himself.

Similarly, in *Wilson v. Neal*, 341 Ark. 282, 16 S.W.3d 228 (2000), we affirmed a sanction of less than disbarment for violations of the Model Rules arising from a plea to five counts of federal misdemeanors for conduct occurring twenty years earlier. As a result of Wilson's pleas, he served time in prison. Like Matthews, Wilson's conduct was not perpetrated against a vulnerable and susceptible client. Wilson's fraud was committed against the federal government for his personal benefit. Wilson had borrowed approximately $775,230 from the Farmers Home Administration for farm operating expenses and secured the loan by a lien on the farm's crops. Wilson then "knowingly" disposed of soybeans and rice that were mortgaged and pledged to FmHA and also "knowingly" took money from a Department of Agriculture bank account and used it for unapproved purposes.

In both *Matthews* and *Wilson*, the fraudulent conduct was self-serving and unconnected to the practice of law. However, in *Hollingsworth* and the instant case, the dishonest acts were perpetrated against or on behalf of clients in the course of the practice of law. As a result, we find ample support for concluding that the trial court was not clearly erroneous for disbarring appellant Cambiano for knowingly and wilfully withholding relevant information and making false representations to a bank and the IRS in an attempt to illegally shield his client's assets from a valid judgment. We affirm the trial court's order of disbarment.

## II. Motion to compel discovery

Cambiano's second point on appeal concerns the trial court's denial of his motion to compel discovery and refusal to consider evidence of other attorney misconduct in determining an appropriate sanction. At trial, appellant sought discovery of Committee materials concerning similarly situated persons and the introduction of an exhibit detailing disciplinary action received by other lawyers' convicted of various offenses. In response to appellant's request, the Committee claimed that the documentation constituted privileged material, including proceedings that had not yet reached a public stage. The Committee also cited Section 4A of the Procedures as

authority for nondisclosure. The trial court agreed with the Committee and denied appellant's motion.

On appeal, Cambiano avers that a disbarment action contemplates an exception to the general rule of privilege. Per Section 4B, the Committee is authorized in a disbarment action to "release any information that the Committee deems necessary for that purpose." Consequently, Cambiano reasons that the Rules of Civil Procedure apply, and no rule bars the release of the objectionable information. In fact, appellant explains that he cannot advance his case without the comparative data because this court utilizes comparative review of discipline in order to arrive at the appropriate sanction. *See, e.g., Matthews*, 342 Ark. 566, 30 S.W.3d 92.

The Committee maintains that the requested discovery was either "absolutely privileged" or public records that appellant could have retrieved from the Supreme Court Clerk. Although the civil rules apply to a disbarment action that takes place in circuit court, the rule remains that only materials that are not privileged are discoverable. Ark. R. Civ. P. 26(b)(1). Accordingly, we affirm the trial court's order denying appellant's motion to compel and excluding the evidence of other attorneys' misconduct.

### III. Cross-appeal

Following his disbarment, appellant filed a motion for clarification of status during the pendency of his appeal to ensure that he complied with the employment restrictions applicable to suspended lawyers. For purposes of the rules, the trial court determined that Cambiano was a "disbarred" attorney. On cross-appeal, the Committee urges us to reverse the trial court's determination that appellant was a disbarred attorney, rather than a suspended attorney, prior to his appeal to this court. "Disbarment" is defined as the termination of the lawyer's privilege to practice law *and* removal of the lawyer's name from the list of licensed attorneys maintained by the Supreme Court Clerk. *See* Procedures Section 7D(1). The Committee suggests that Cambiano is not effectively disbarred until his name is removed from the stated list. However, given that the trial court's order of disbarment was not stayed pending resolution of the appeal, we have no basis to conclude that the order was not final. Accordingly, we agree with appellant that he remains a disbarred attorney during the pendency of his appeal.

Affirmed.