Michael Everett TODD *v.* Stark LIGON, as Executive Director
of the Supreme Court Committee on Professional Conduct

03–415                                                         148 S.W.3d 229

Supreme Court of Arkansas
Opinion delivered February 19, 2004

*Appellant,* pro se.

*Stark Ligon,* for appellee.

ROBERT L. BROWN, Justice. Appellant Michael Everett Todd appeals from two orders of the Greene County Circuit Court. The first order granted summary judgment in favor of appellee Stark Ligon, Executive Director of the Supreme Court Committee on Professional Conduct (Committee), and the second order disbarred Mr. Todd from the practice of law in Arkansas. His sole point on appeal is that the circuit court erred in disbarring him without first appointing counsel to represent him under former Arkansas Rule of Civil Procedure 17(c).[1] We affirm the orders of the circuit court.

On November 16, 2000, Mr. Todd was convicted in federal court of two counts of aiding and abetting mail fraud and two counts of aiding and abetting money laundering, all of which are felonies. Mr. Todd was sentenced to forty-six months' imprisonment in the Federal Bureau of Prisons and was also assessed $400. Upon release from prison, Mr. Todd was subject to supervised release for three years.

On April 6, 2001, the Committee suspended Mr. Todd's license to practice law pursuant to its authority under Section 7 of the Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law (2001 Procedures).[2] On May 16, 2001, the Committee filed a complaint of disbarment in circuit court against Mr. Todd. The complaint alleged that he was licensed to practice law in Arkansas on August 24, 1978, and that he had engaged in "serious misconduct" as defined in Section 7B of the 2001 Procedures.[3] The serious misconduct, according to the complaint, was evidenced by Mr. Todd's felony convictions in

---

[1] Arkansas Rule of Civil Procedure 17(c) has recently been deleted by *per curiam* order of this court. *See In Re: Arkansas Rules of Civil Procedure; Rules of Appellate Procedure — Civil, Rules of the Supreme Court and Court of Appeals; and Inferior Court Rules,* 355 Ark. Appx. 725 (Jan. 22, 2004).

[2] The Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law were revised by this court in *In Re: Amendments to the Procedures Regulating Professional Conduct of Attorneys at Law; and the Model Rules of Professional Conduct, Rules 1.4 and 1.15,* 345 Ark. Appx. 675 (2001), and became effective January 1, 2002. The authority to suspend is now found in Section 17 of the 2003 Procedures.

[3] "Serious misconduct" is now defined in Section 17B of the 2003 Procedures.

federal court. Based on this, the Committee sought Mr. Todd's disbarment for violating Rules 8.4(b-d) of the Arkansas Model Rules of Professional Conduct (2001 Model Rules). The record reflects that Mr. Todd received this complaint by certified mail on May 24, 2001, while living in Paragould and before his imprisonment.

On June 12, 2001, Mr. Todd filed his answer in which he admitted that a judgment of conviction was entered against him but denied "that the merits of the conviction justify disbarment." Mr. Todd further asserted in his answer that the mere allegation of felony convictions, without supporting facts and testimony, did not justify disbarment under the Model Rules. He also pointed out that his convictions in federal district court were on appeal to the Eighth Circuit Court of Appeals, and for that reason, the disbarment proceedings should be stayed. Six days later on June 18, 2001, Mr. Todd advises this court that he reported to federal prison. On November 23, 2001, the Eighth Circuit Court of Appeals affirmed Mr. Todd's convictions. *See United States v. Todd*, 23 Fed. Appx. 608 (8th Cir. 2001).

On April 8, 2002, the Committee moved for summary judgment and alleged that Mr. Todd could not present sufficient mitigating facts to outweigh the aggravating facts, namely his four felony convictions. The Committee further asserted that his convictions were *prima facie* and conclusive evidence of his guilt and of his violation of the Model Rules. The Committee also observed that pursuant to Section 6B(4) of the 2001 Procedures, a defendant is not permitted to offer evidence inconsistent with the essential elements of the crimes for which he was convicted.[4] The Committee prayed for disbarment or, in the alternative, for partial summary judgment on the issue that Mr. Todd engaged in "serious misconduct" by violating the Model Rules and asked that the appropriate sanction be considered in a later proceeding.

On May 28, 2002, Mr. Todd sent a letter to the circuit court noting that he was currently incarcerated at a federal prison camp in Millington, Tennessee. In that letter, he requested that the court appoint him counsel pursuant to Arkansas Rule of Civil Procedure 17(c). On July 16, 2002, Mr. Todd formally moved the circuit court for appointment of counsel and filed a legal brief in support of the motion.

---

[4] The same provision can now be found in Section 15C(4) of the 2003 Procedures.

On July 29, 2002, the circuit court granted the Committee's summary-judgment motion as to liability and denied Mr. Todd's motion for the appointment of counsel. The court found in a letter opinion:

> As I stated before, I do not believe that Mr. Todd's position is well taken. My reasoning lies in a plain reading of Rule 17(c), which is as follows:
>
>> No judgment shall be rendered against a prisoner in the penitentiary until [after] a defense made for him by his attorney, or, if there is none, by a person appointed by the court to defend for him.
>
> It seems to me that a defense has been made for Mr. Todd within the meaning of Rule 17(c) when he filed an Answer on June 12, 2001. That defense has not prevailed, however. I am therefore denying Mr. Todd's motion. Mr. Todd makes mention of no benefit that will accrue to him if an attorney were appointed to him, nor any prejudice that he might possibly suffer if one is not. In fact, the motion has the earmarks of a delaying tactic. If, as M[r]. Todd suggests, my interpretation of Rule 17(c) is "gross error," he may, of course, take that up with the Supreme Court at the appropriate time.

On July 31, 2002, the circuit court entered an order granting summary judgment to the Committee. The order noted that Mr. Todd's convictions had been affirmed on appeal by the Eighth Circuit, and that though he was served with the Committee's motion for summary judgment, he had, to date, filed no response. The order then found Mr. Todd in default in responding to the motion and concluded:

> 8. Defendant Todd was convicted of two class D federal felonies and two class C federal felonies, and sentenced to a term of forty-six (46) months imprisonment. These convictions are "serious crimes" and "serious misconduct" as defined in the Arkansas Supreme Court Procedures Regulating Professional Conduct of Attorneys at Law (1998). These felony convictions and their elements are conclusive evidence of Defendant Todd's guilt and his violation of Model Rules 8.4(b), 8.4(c), and 8.4(d).
>
> 9. The appropriate sanction for Defendant Todd's conduct is disbarment.

IT IS THEREFORE, considered, ordered and adjudged that the Motion for Summary Judgment is granted, and the sanction of disbarment is imposed upon Defendant Michael Everett Todd, Arkansas Bar No. 78153.

On August 30, 2002, the July 31, 2002 order was modified by the circuit court. The court limited the grant of summary judgment to the issue of liability and took under advisement the issue of the appropriate sanction. In doing so, he permitted Mr. Todd time to submit any materials supporting mitigation.

On September 5, 2002, in a letter to the court, Mr. Todd renewed his request for the appointment of counsel and made his arguments for a sanction less than disbarment. He asserted that he had an unblemished record as a practicing attorney for more than twenty-two years; that he was innocent of the federal crimes; that he challenged the Committee to state which facts in his case constituted fraud and dishonesty; and that his disbarment would be a disproportionate punishment when compared to others involved in his case and to other attorneys who had been sanctioned by the Committee, including former president William Jefferson Clinton, who received a five-year suspension for his misconduct. In a separate letter to the court dated October 3, 2002, Mr. Todd again offered facts he claimed were mitigating factors which should lead to a lesser sanction than disbarment. He presented no materials to the court supporting mitigation; nor did he ask for additional time to do so.

On December 23, 2002, the circuit court entered its final order. The court found the following with respect to aggravating factors:

> It seems to the court that Mr. Todd's motive must have been, if not a selfish one, at least a dishonest one. There is no evidence of a pattern of conduct. There were multiple offenses; as stated previously, Mr. Todd was convicted of four separate counts. Although the court noted at one point in its correspondence that Mr. Todd seemed to be employing delaying tactics, the court is not prepared to make a finding that he has in bad faith obstructed the disciplinary process by virtue of the fact that he asserted rights that he believed were due him. The court is not prepared to label Mr. Todd's gamesmanship as "deceptive practices." The court is convinced that Mr. Todd continues to deny the wrongful nature of his conduct. In spite of his conviction and in spite of the fact that the Eighth Circuit Court of Appeals affirmed that conviction Mr. Todd apparently

accepts no responsibility for any of the events that have led to his conviction and incarceration. Mr. Todd stated that he was licensed to practice in 1978, thus he had been licensed to practice for over twenty years at the time of the conviction. Finally, Mr. Todd was certainly involved in illegal conduct, as discussed above. [Footnotes omitted.]

The court found the following to be mitigating factors and added a few more aggravations:

> Mr. Todd states, and the Committee does not challenge that he has no prior disciplinary record. The court accepts therefore that there is no prior disciplinary record. No personal or emotional problems have been made known to the court. Mr. Todd states that he has made full restitution of all amounts received under the program. That assertion has been unchallenged. The court does not believe that Mr. Todd has been particularly cooperative with the disciplinary proceedings. Mr. Todd has suffered other penalties through the imposition of the criminal sanction by the federal court. Mr. Todd has expressed no remorse that the court has been able to discern.

The court then concluded:

> The nature and degree of the misconduct was such that, in the court's opinion, it helped to further undermine the confidence of the public in not only the legal profession, but in the operation of government. The court is of the opinion that considerable harm has been done [to] the profession as a result of the conduct complained of.

The court granted the Committee's motion for summary judgment as to the sanction and revoked Todd's license to practice law in Arkansas, ordered his name removed from the registry of licensed attorneys, and barred him from engaging in the practice of law.

Mr. Todd now asserts before this court in his *pro se* appeal that Rule 17(c) was violated. During all of the time relevant to this appeal, that rule read:

> (c) *Prisoners.* No judgment shall be rendered against a prisoner in the penitentiary until after a defense made for him by his attorney, or, if there is none, by a person appointed by the court to defend for him.

Ark. R. Civ. P. 17(c) (2003). This rule, he urges, protects the rights of incarcerated persons and serves to promote the ends of justice and to streamline the judicial process. He contends, in addition, that the mere filing of an answer does not constitute a defense. Thus, he claims that the circuit court clearly erred in finding there was compliance with Rule 17(c). Mr. Todd further maintains that due to his incarceration and his lack of counsel, he was unable to conduct discovery, collect affidavits, attend hearings, or make oral arguments to the court. Because of this, he maintains that he was at a disadvantage in submitting evidence to the court and that he would have benefitted greatly from the appointment of counsel. He concludes that in failing to appoint him counsel and by entering judgment against him, the circuit· court committed fatal error.

The Committee responds that Rule 17(c) does not require the appointment of an attorney to represent an incarcerated individual, but only a "person." Furthermore, it contends that Mr. Todd was an attorney and presented a defense by filing an answer before he was actually incarcerated. The Committee emphasizes that the court did not err in granting summary judgment as to liability, because Section 6B(4) of the 2001 Procedures clearly provides that an attorney may not go behind his federal felony convictions under any circumstances. With this in mind, the Committee urges that under the Procedures, there was no discovery or interrogation of witnesses to conduct and no presentation of evidence to be offered as to liability. Hence, the only remaining issue, according to the Committee, was the appropriate sanction. With respect to the sanction, the Committee points out that there was no conclusive evidence offered by Mr. Todd that he was hampered in his preparation of affidavits of witnesses while in prison.

On appeal from a circuit court's order of disbarment, this court reviews the matter *de novo* on the record and will not reverse the circuit court's findings unless they are clearly erroneous. *See Cambiano v. Ligon*, 345 Ark. 124, 44 S.W.3d 719 (2001). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made. *See id.*

Rule 17(c) derives from Arkansas Statutes Annotated, § 27-833, which dates back to 1869. *See* Code of Practice in Civil & Criminal Cases, § 56 (1869). Section 27-833 was superseded by the court's adoption of the Civil Rules of Procedure in 1978,

which included Rule 17(c). *See Re: Rules of Civil Procedure,* 264 Ark. Appx. 964 (1978). The language of Rule 17(c) was virtually identical to § 27-833.

Although Rule 17(c) rarely appears in the cases decided by this court, its predecessor, § 27-833, has been cited on several occasions. In 1961, in *Alexander v. Jones,* 233 Ark. 708, 346 S.W.2d 692 (1961), a foreclosure suit was instituted by the seller against the appellant who was in prison. An attorney, who was appointed for the appellant by the court, filed an answer denying the allegations in the complaint. The foreclosure was granted, and the property was sold to new purchasers. Upon his release from the penitentiary, the appellant filed a complaint in chancery court and alleged that he had not been served with a summons in the foreclosure suit against him. He requested that the foreclosure deed be set aside and the deed cancelled as well as damages for the loss of the property. The chancellor dismissed the matter for lack of equity. The matter was appealed, and we affirmed. We noted that the evidence reflected that service had been attempted on the appellant's wife and that the chancery court had appointed counsel to represent the appellant's interests. We affirmed on the basis that the appellant defaulted on the foreclosure suit but had offered no meritorious defense to the suit to offset the default judgment.

In 1972, this court again cited § 27-833 in *Shappy v. Knight,* 251 Ark. 943, 475 S.W.2d 704 (1972). In *Shappy,* the question at issue was whether § 27-833 applied in a guardianship proceeding. The appellant had given birth to a child while incarcerated. After giving consent to having her son placed in the legal custody of the Arkansas Department of Public Welfare, a guardianship proceeding was instituted for adoption purposes. This court observed that "[a]dmittedly, appellant never was represented nor had the benefit of an attorney during this proceeding." 251 Ark. at 944, 475 S.W.2d at 706. We then discussed the history of § 27-833 and focused specifically on *Puckett v. Needham,* 198 Ark. 123, 127 S.W.2d 800 (1939):

> We think the wisdom of the legislature in enacting this statute in 1869 is amply demonstrated by the facts in this case. No doubt the legislature was aware that inmates in the penitentiary are so disadvantaged in their liberties and ability to communicate their interest directly to the courts that it deemed this statute desirable to prevent misunderstandings, such as this, and to provide for the inmate's day in court. In *Puckett v. Needham,* 198 Ark. 123, 127 S.W.2d 800 (1939)

a divorce decree, which vested title to real property in the appellee's husband, was vacated and an order confirming a commissioner's sale and deed to the appellant and his wife, who were innocent purchasers, was set aside. There process was actually served upon appellee when she was in the Pulaski County Jail. Later she was transferred to the federal penitentiary and, as an inmate without counsel, a default judgment was rendered against her. In applying the requirement of § 27-833 that an inmate must have the benefit of counsel in that court proceeding we said:

> * * * Under the statute, the fact of confinement in the penitentiary deprives the court of jurisdiction until answer is filed by the defendant's attorney, or until the attorney appointed by the court has made proper defense.

> *See, also, Armstrong v. Manzo*, 380 U.S. 545 (1965). In the case at bar we are of the view that the final guardianship order, which was made without compliance with this long-standing statute, must be vacated and set aside.

*Id*. at 944–45, 475 S.W.2d at 706.

In 1982, this court again addressed § 27-833 in examining whether a 1978 personal-injury and property-damage default judgment entered against the appellant while he was in prison was void or merely voidable. *See Zardin v. Terry*, 275 Ark. 452, 631 S.W.2d 285 (1982). The appellant relied on this court's decision in *Puckett v. Needham, supra*. However, this court concluded that the *Puckett* case was an "out-of-step" case, because it concluded that a default judgment was void due to the defendant's imprisonment. We determined that such judgments are actually voidable, not void, and we affirmed the entry of the default judgment against the appellant, because he failed to present a meritorious defense. We reasoned as follows:

> In the case at bar Zardin was a free man when he was served with summons and when he permitted the time to expire for filing his answer to the complaint. Thus the court had jurisdiction both of the subject matter and of the person when it entered its default judgment after Zardin had become a prisoner. That judgment, if not completely valid, was at the very worst merely voidable for the reasons given in the *McDonald* case [*McDonald v. Fort Smith & Western R.R.*, 105 Ark. 5, 150 S.W. 135 (1912)]. Zardin has failed in his effort to avoid the judgment, for his proof did not establish a meritorious defense. The trial court's judgment was therefore correct.

275 Ark. at 455, 631 S.W.2d at 287.

In 1994, in the case of *Arnold & Arnold v. Williams*, 315 Ark. 632, 870 S.W.2d 365 (1994), the appellant argued that the chancery court erred in striking his answer to a counterclaim, because the court was without jurisdiction over the matter due to his incarceration and the fact that counsel was not appointed for him under Rule 17(c). The court noted that although the record failed to reflect the dates of the appellant's incarceration, it did reflect that he was represented by counsel "at the time the answers were stricken and at the time the default judgment was granted, and, consequently, there was compliance with the rule." 315 Ark. at 639, 870 S.W.2d at 369. We noted that even if there had not been compliance, pursuant to *Zardin v. Terry, supra*, the judgment would have been merely voidable, not void.

Finally, in *Zinger v. Terrell*, 336 Ark. 423, 985 S.W.2d 737 (1999), this court observed in passing that Rule 17(c) required the appointment of counsel:

> . . . The chancery court granted the motion and found that Zinger, by virtue of her murder conviction, was precluded from receiving any life insurance proceeds arising from Holley's death. *That summary-judgment order was subsequently set aside in order to comply with Ark. R. Civ. P. 17(c), which requires appointment of counsel for prisoners in the penitentiary, if the prisoner has no counsel.* An attorney was appointed for Zinger, and a response to Terrell's motion for summary judgment was filed on her behalf.

336 Ark. at 425-26, 985 S.W.2d at 739 (emphasis added).

We first conclude that an order of disbarment is a final judgment of the rights of the parties and is a judgment as contemplated by Rule 17(c). *See Shappy v. Knight, supra.* Hence, the rule applies to Mr. Todd. In interpreting our rules, this court has held that we will use the same criteria, including the same canons of construction, that are used to interpret statutes. *See Cortinez v. Arkansas Supreme Court Comm. on Prof'l Conduct*, 353 Ark. 104, 111 S.W.3d 369 (2003). In doing so, this court must first consider the meaning and effect of the rule and construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *See Bell v. Bershears*, 351 Ark. 260, 92 S.W.3d 32 (2002). When the language is plain and unambiguous, there is no need to resort to rules of statutory construction, and the analysis need go no further. *See id.*

■ We hold that the language of Rule 17(c) is plain and unambiguous. The text of the rule is exceedingly clear that when a person is incarcerated in the penitentiary, no judgment shall be entered against him until after counsel, either retained or appointed, has made a defense for him. The Committee does mount the argument that Rule 17(c) only requires that a "person" be appointed to represent an inmate and not necessarily an attorney. We disagree. It is clear to this court that the "person appointed by the court to defend . . . him" under the rule must necessarily be an attorney.

■ Two critical points can be gleaned from our case law. First, Rule 17(c) and its predecessor statute have been invoked most often to prevent default judgments against prisoners. *See, e.g., Zardin v. Terry, supra; Puckett v. Needham, supra.* And, second, we have held more recently that failure to comply with the rule renders the judgment merely voidable instead of void. *See Zardin v. Terry, supra.*

■ Having said that, we are of a mind that Mr. Todd had counsel in that he represented himself and presented a full defense. It is true that he was suspended from practice on April 6, 2001, but prior to that time, he had practiced law for twenty-two years. His representation of himself in this disbarment proceeding is evidenced by the record. On June 12, 2001, he filed a *pro se* answer to the Committee's disbarment complaint before reporting to prison. While in prison, he filed a formal motion for appointment of counsel on July 16, 2002, together with a legal brief, and after the order of disbarment, he filed a *pro se* notice of appeal. In addition, he wrote directly to the circuit court from prison on May 28, 2002; on August 1, 2002; and on September 5, 2002, regarding appointment of counsel. On October 3, 2002, he wrote a seven-page letter to the court, in which he outlined his defense to his federal convictions, questioned the disparate punishments meted out to him and to the other defendants in the federal criminal matters, and offered mitigating factors for the court to consider in assessing his sanction. On October 11, 2002, he wrote to the court and asked that it strike the Committee's reply to his response regarding his convictions and mitigating factors. On November 4, 2002, he wrote the court complaining about the prison's law library. Although many of these letters were not in the form of legal pleadings, the circuit court received the communications, consid-

ered them, and made them part of the record in this case. Without question, he had unimpeded access to the circuit court in arguing his case.

█ The only real issue in this case is what additional mitigating evidence Mr. Todd could have presented, with the aid of counsel, to support a sanction less than disbarment. Mr. Todd shows us none. On the contrary, he made an ample defense on his own behalf and offered mitigating factors to the court in his seven-page letter. Though he now vigorously asserts that outside counsel would have assisted him in this case, he fails to show this court what affidavits he was thwarted in presenting and what witnesses were denied him in mounting his case. Without such particulars, we fail to discern how Mr. Todd was prejudiced in any way in presenting his case by not having appointed counsel. Certainly, Mr. Todd offers nothing more than conclusory allegations. The circuit court found, after examining the arguments of both parties as well as the mitigating and aggravating factors outlined in *Wilson v. Neal*, 332 Ark. 259, 964 S.W.2d 199 (1998), that disbarment was appropriate. Under this court's prior holdings relating to Rule 17(c), judgments entered against incarcerated persons without counsel are voidable. Mr. Todd has failed in his attempt to show this court why disbarment is not appropriate. We conclude that the two orders in this case should stand.

Affirmed.