The Honorable David Bisbee State Senator 14068 Pyramid Drive Rogers, Arkansas 72758-0116
Dear Senator Bisbee:
I am writing in response to your request for an opinion on the following questions concerning a request for paid leave time by a city employee who decided to re-enlist in the National Guard after learning that his former unit had received an alert order:
 1. In reviewing a leave of absence request made by a city employee, pursuant to Arkansas Code Annotated § 21-4-102, is it relevant to consider whether the city employee was involuntarily called up for service in the National Guard or volunteered for service, after his potential unit was already under an alert order?
 2. Does an employee's motivation for joining the National Guard impact his right to receive paid leave time pursuant to Arkansas Code Annotated § 21-4-102?
You state that you have asked these questions "[g]iven the recent alert and mobilization orders handed down to Arkansas National Guard units. . . ."
RESPONSE
The answer to both of these questions is in all likelihood "no," in my opinion.
Question 1 — In reviewing a leave of absence request made by a cityemployee, pursuant to Arkansas Code Annotated § 21-4-102, is it relevantto consider *Page 2 whether the city employee was involuntarily called up for service in theNational Guard or volunteered for service, after his potential unit wasalready under an alert order?
The reference to an employee who was "involuntarily called up for service" presumably has reference to an employee who was already in the National Guard when the alert order was issued. The distinction drawn between such an employee and one who "volunteered for service" reflects a concern that to be entitled to paid leave under A.C.A. § 21-4-102, an employee must already have been a member of the National Guard when the order was issued. This concern is perhaps understandable in light of certain wording of this statute, which directs that reserve members of the National Guard or armed forces be granted paid leave for designated periods if they desire to take a leave of absence for training, or are "called to duty" in response to an "emergency situation" as statutorily defined. The statute provides in relevant part as follows:
 (a)(1) All employees of . . . any of [the state's] political subdivisions, who desire to take a leave of absence for the purpose of participating in the military training programs made available by the National Guard or any of the reserve branches of the armed forces . . . shall be entitled to such a leave of absence for a period of fifteen (15) days plus necessary travel time for annual training requirements or other duties performed in an official duty status in any one (1) calendar year.
 (2) To the extent this leave is not used in a calendar year, it will accumulate for use in the succeeding calendar year until it totals fifteen (15) days at the beginning of the calendar year.
 (b)(1) Whenever any employee is granted a leave of absence under the provisions of this section, he or she shall be entitled to his or her regular salary during the time he or she is away from his or her duties during such leave of absence.
 (2) The leave of absence shall be in addition to the regular vacation time allowed to the employee.
 (c)(1) Employees called to duty in emergency situations by the Governor or by the President shall be granted leave with pay not to exceed thirty (30) working days, after which leave without pay will *Page 3 
be granted. This leave shall be granted in addition to all other leave the employee shall be entitled to.
 (2) "Emergency situations" shall have the same meaning as in § 21-4-212.[1]
 * * * (e) Whenever any employee of a political subdivision is granted military leave for a period of fifteen (15) days per calendar year or fiscal year under the provisions of this section, the military leave will accumulate for use in succeeding calendar years or fiscal years until it totals fifteen (15) days at the beginning of the calendar year or fiscal year, for a maximum number of military leave days available in any one (1) calendar year or fiscal year to be thirty (30) days.
A.C.A. § 21-4-102 (Repl. 2004).
Subsection (a) of the statute thus provides that employees "who desire to take a leave of absence" for participation in military training shall be afforded up to thirty days of paid leave for training in any given year if the employee took no paid leave for training in the preceding year. See Op. Att'y Gen. 2001-036. Pursuant to subsection (c), "[e]mployees called to duty in emergency situations" are entitled to one thirty-day period of paid leave. See Op. Att'y Gen. 2004-154.
Regarding the "alert order" that you have referenced, I do not know whether the particular circumstances trigger military training leave under subsection 21-4-102(a), or instead leave for service in an "emergency situation" under subsection 21-4-102(c). As one of my predecessors had occasion to note, this generally entails a factual inquiry that I am not situated to undertake. See Op. Att'y Gen.2002-342. I will therefore address your question with respect to both statutory directives.
With regard to annual leave for training, a plain reading of this provision suggests that it should make no difference whether the employee was involuntarily called up for service or volunteered for service. If the employee "desire[s] to take a leave" *Page 4 
for training, he or she "shall be entitled" to such leave. A.C.A. §21-4-102(a)(1). It is of course well established that a statute should be construed just as it reads, giving the words their ordinary and usually accepted meaning. See, e.g., Todd v. Ligon, 356 Ark. 187,148 S.W.3d 229 (2004). Accordingly, in my opinion the answer to your first question is clearly "no" with regard to a request for leave for the purpose of military training. In reviewing a request for such leave, I believe it is irrelevant whether the city employee was involuntarily or voluntarily called up for service.
With regard to a request for leave for service in response to an emergency situation, if the "alert order" that you have referenced qualifies as a call to such service, the question is whether the employee was "called to duty in [an] emergency situation" as contemplated by A.C.A. § 21-4-102(c). Because the alert order was issued before he re-enlisted, it might be contended that he is not covered by A.C.A. § 21-4-102, wherein it states that "[e]mployees called toduty . . . shall be granted leave with pay." Id. at (c)(1) (emphasis added). He can be viewed as having volunteered for service under these circumstances, where his service resulted from his having actively rejoined, thereby subjecting himself to the alert order. The question is whether this volunteer status matters for purposes of subsection21-4-102(c).
In my opinion, it probably does not matter. He presumably was covered by the alert order upon re-enlisting. He was therefore "called to duty" at that point. Although the wording of the statute might suggest that he had to be in the unit when the call to order issued, it is difficult to conclude that the legislature intended to make this distinction, particularly given its possible negative effect. The legislature surely did not intend to discourage persons from joining the National Guard during an "emergency situation." The court has held that "it does not engage in interpretations that defy common sense and produce absurd results," and that "in construing statutes . . . we look to the language under discussion in the context of the statute as a whole." Green v.Mills, 339 Ark. 200, 4 S.W.3d ___ (1999), citing Haase v. Starnes,323 Ark. 262, 915 S.W.2d 675 (1996).
Accordingly, in reviewing a request for paid emergency leave under A.C.A. § 21-4-102, I believe it is irrelevant whether the city employee volunteered for service after his unit was already under an alert order. If faced with the question, I believe a court would likely conclude that the employee was nonetheless "called to duty" under those circumstances. *Page 5 Question 2 — Does an employee's motivation for joining the NationalGuard impact his right to receive paid leave time pursuant to ArkansasCode Annotated § 21-4-102?
The answer to this question is "no," in my opinion. The employee's motivation for joining the National Guard is in my opinion similarly irrelevant to the question whether he or she is entitled to paid leave pursuant to A.C.A. § 21-4-102.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Subsection 21-4-212 defines the term "emergency situations" to mean "any case of invasion, disaster, insurrection, riot, breach of peace, or imminent danger thereof, threats to the public health or security, or threats to the maintenance of law and order." A.C.A. §21-4-212(e) (Repl. 2004).