WIGGINS, Justice
(dissenting).
It is almost axiomatic that we revoke the license of a lawyer who steals. Comm. on *531 Prof'l Ethics & Conduct v. Ottesen, 525 N.W.2d 865, 866 (Iowa 1994). There is no place in our profession for an attorney who steals funds from another. Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bell, 650 N.W.2d 648, 652 (Iowa 2002). Dishonesty is a trait that disqualifies a person from the practice of law. Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Irwin, 679 N.W.2d 641, 644 (Iowa 2004).
We have an obligation to protect the public from theft and deceit. Bell, 650 N.W.2d at 652. When a theft occurs, we need not address other disciplinary violations to revoke an attorney’s license. See, e.g., Iowa Supreme Ct. Att’y Disciplinary Bd. v. Adams, 809 N.W.2d 543, 546 (Iowa 2012); Iowa Supreme Ct. Att’y Disciplinary Bd. v. Earley, 774 N.W.2d 301, 309 (Iowa 2009). We do not diminish the seriousness of the violation for stealing funds where the attorney’s misappropriation does not involve client funds. Bell, 650 N.W.2d at 652. The amount of money converted by the attorney also does not lessen the discipline. Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Anderson, 687 N.W.2d 587, 590 (Iowa 2004). Neither does it matter that the attorney replaced the funds. Comm. on Prof'l Ethics & Conduct v. Pappas, 313 N.W.2d 532, 533-34 (Iowa 1981).
We have done a decent job applying these principles when disciplining attorneys involved in thefts. We revoked the license of attorneys who misappropriated funds from their clients. See, e.g., Adams, 809 N.W.2d at 546; Iowa Supreme Ct. Att’y Disciplinary Bd. v. Wengert, 790 N.W.2d 94, 104 (Iowa 2010); Earley, 774 N.W.2d at 309; Iowa Supreme Ct. Att’y Disciplinary Bd. v. D’Angelo, 710 N.W.2d 226, 236-37 (Iowa 2006); Iowa Supreme Ct. Att’y Disciplinary Bd. v. Reilly, 708 N.W.2d 82, 85 (Iowa 2006); Anderson, 687 N.W.2d at 590; Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett, 674 N.W.2d 139, 144-45 (Iowa 2004); Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Leon, 602 N.W.2d 336, 339 (Iowa 1999). We revoked the license of an attorney when he knowingly assisted a client defraud a bank. Iowa Supreme Ct. Att’y Disciplinary Bd. v. Nelsen, 807 N.W.2d 259, 267-68 (Iowa 2011). We revoked the license of an attorney who personally defrauded a bank with a false loan application. Comm. on Prof'l Ethics & Conduct v. Hall, 463 N.W.2d 30, 35-36 (Iowa 1990). We revoked the license of an attorney who gave false information to a bank to obtain a credit card. Comm. on Prof'l Ethics & Conduct v. Littlefield, 244 N.W.2d 824, 826 (Iowa 1976). We revoked the license of an attorney who stole money from his law firm. Irwin, 679 N.W.2d at 644-45; Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Carr, 588 N.W.2d 127, 129-30 (Iowa 1999); Comm. on Prof'l Ethics & Conduct v. Hanson, 244 N.W.2d 822, 824 (Iowa 1976). We revoked a lawyer’s license for stealing two credit cards and using them without the owner’s authorization. Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Palmer, 563 N.W.2d 634, 634-35 (Iowa 1997). We revoked a lawyer’s license for stealing from her employer. Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Williams, 675 N.W.2d 530, 533 (Iowa 2004). We revoked the license of a lawyer who helped his brother in a scheme to defraud his brother’s employer. Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Vinyard, 656 N.W.2d 127, 132 (Iowa 2003). We revoked the license of an attorney for stealing money from a nonprofit association. Iowa Supreme Ct. Att’y Disciplinary Bd. v. Carroll, 721 N.W.2d 788, 791-92 (Iowa 2006). We revoked the licenses of husband-and-wife attorneys for converting social security benefits erroneously paid to the deceased mother of one of the attorneys. Iowa Supreme Ct. Att’y *532 Disciplinary Bd. v. Polsley, 796 N.W.2d 881, 886 (Iowa 2011). We revoked the licenses of attorneys who commingled trust account funds with their own monies. Comm. on Prof'l Ethics & Conduct v. Shaffer, 230 N.W.2d 1, 2-3 (Iowa 1975); Comm. on Prof'l Ethics & Conduct v. Rowe, 225 N.W.2d 103, 103-04 (Iowa 1975). The common thread running through these license revocations is that the attorney did not have the requisite character to practice law.
The facts in this case are undisputed. Bieber knowingly made a false statement to the bank to assist his client in obtaining funds the client would not otherwise be entitled to receive. In other words, Bieber knowingly assisted his client in misappropriating money from the bank. We revoked the law licenses of three other attorneys in three separate matters for similar conduct. Nelsen, 807 N.W.2d at 267-68; Vinyard, 656 N.W.2d at 132; Hall, 463 N.W.2d at 35-36.
The majority avoids revoking Bieber’s license by suggesting this is not a real theft.[11] This characterization is akin to putting lipstick on a pig. The truth to this colloquialism is apparent: no matter how much lipstick you apply, it is still a pig. Accordingly, no matter how the majority characterizes Bieber’s conduct, he still assisted a client in stealing money from the bank. Stealing is stealing.
On top of that, his conduct earned him the distinction of becoming a convicted felon. Other jurisdictions have no hesitation in revoking an attorney’s license when he or she participates in defrauding a bank and is subsequently convicted of a felony. At least twenty-one other states will revoke the license of or disbar an attorney for similar conduct.[12] My posi *533 tion is also consistent with the ABA Standards for Imposing Lawyer Sanctions. The ABA Standards provide:
Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer in other respects, or in cases with conduct involving dishonesty, fraud, deceit, or misrepresentation:
5.11 Disbarment is generally appropriate when:
(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or
(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer’s fitness to practice.
ABA Standards for Imposing Lawyer Sanctions §§ 5.1, 5.11 (1992).
We also have revoked the license of an attorney for substantially similar conduct. Littlefield, 244 N.W.2d at 826. In Littlefield, a court convicted Littlefield of the crime of attempting to commit a felony, which is a misdemeanor under the laws of Kentucky. Id. at 825. The underlying facts of the crime were that Littlefield made a false statement regarding his financial condition to a bank in order to procure a credit card. Id. Based on that misrepresentation, we found
[h]is dishonest and deceitful conduct in these regards demonstrates his lack of the requisite good moral character required of an individual before he is permitted to engage in the practice of law in this state, and his actions permit of no other sanction than the immediate and *534 permanent revocation of his license to practice the profession of law in Iowa.
Id. at 826.
Had Bieber been convicted of this felony before he became a lawyer, I doubt we would have allowed him to sit for the bar exam. See Iowa Code § 602.10102 (2011) (“Every applicant for such admission shall be a person of honesty, integrity, trustworthiness, truthfulness and one who appreciates and will adhere to a code of conduct for lawyers as adopted by the supreme court.”); Iowa Ct. R. 31.9(1) (requiring all persons who apply for admission to the Iowa bar to have the requisite moral character or fitness). The same test should apply to attorneys who steal money or help others do so after they are licensed.
Ever since my appointment to the court, I have been troubled by the court picking and choosing the types of fraud and stealing that will result in the revocation or suspension of an attorney’s license. I initially went along with this practice, because I felt it was important for the court to speak with one voice when meting out attorney discipline.
In recent years, however, I have seen more and more attorneys taking property from clients or knowingly aiding and abetting a client in stealing property from others. Yet I held out hope that we would abandon this inconsistent practice when we decided Nelsen, 807 N.W.2d at 266-68. There, we revoked the license of an attorney who knowingly aided and abetted his client in defrauding a bank of funds, even though the attorney had no criminal conviction for his misconduct. Id.
Here, we have an attorney who knowingly helped his client obtain funds from the bank. This constitutes the exact same conduct as in Nelsen, but the case for Bieber’s license revocation is stronger. Bieber pled guilty to this misconduct and has a felony conviction. Despite this, the members of the court, once again, pick from their palate a rosier hue of stealing and choose to impose a discipline inconsistent with our precedent. For this reason, I can no longer remain silent.[13]
It is the court’s obligation to protect the public from attorneys who are unfit to practice law. Bieber’s law license gave him the privilege of assisting clients with their legal matters — it did not pave the way for him to aid a client in defrauding a bank and committing a felony. By choosing to undertake these actions, Mr. Bieber has forfeited his privilege to practice law in this state.
We, as a court and as the regulatory body for our profession, have an obligation to protect the public from dishonest attorneys. I echo the beginning of this dissent — dishonesty is a trait that disqualifies a person from the practice of law. A person who uses his law license to steal money or aids another to do so is per se unfit to practice law. Cases like this give the public the perception that a license to practice law is a license to steal. I have no hesitation in revoking Bieber’s license.

. The majority relies on our decision in Iowa Supreme Court Board of Professional Ethics & Conduct v. Gallner, 621 N.W.2d 183 (Iowa 2001), to characterize Bieber’s conduct as a misrepresentation. We analyzed Gallner’s conduct as a misrepresentation he made to the Social Security Administration and not as a theft. Gallner, 621 N.W.2d at 187. Moreover, Gallner was not a convicted felon. Had we analyzed Gallner’s conduct as a theft, I believe the outcome would have been different.

. See, e.g., Cambiano v. Ligon, 345 Ark. 124, 44 S.W.3d 719, 720-21 (2001) (disbarring attorney convicted of aiding and abetting the causing of a financial institution to file a false currency-transaction report); People v. Hilgendorf, 895 P.2d 544, 544-45 (Colo.1995) (disbarring attorney with a federal conviction for two counts of bank fraud); In re Brewster, 587 A.2d 1067, 1067 (Del.1991) (disbarring attorney who pleaded guilty to one count of bank fraud); In re Lickstein, 972 A.2d 314, 316 (D.C.2009) (disbarring attorney convicted of conspiring to commit felony bank fraud through a scheme involving mortgage financing); Florida Bar v. Forbes, 596 So.2d 1051, 1051-53 (Fla.1992) (ordering disbarment retroactively to the date of the felony suspension for attorney who pleaded guilty to making false statements in financial documents); In re Brannon, 249 Ga. 404, 291 S.E.2d 523, 523-24 (1982) (accepting attorney's voluntary surrender of license to practice law after attorney pleaded guilty to making a materially false statement to a bank); In re Dickson, 250 Kan. 1, 824 P.2d 197, 197-98 (1992) (disbarring attorney who made false statements to a bank); Ky. Bar Ass’n v. Matthews, 131 S.W.3d 744, 744-45 (Ky.2004) (disbarring attorney convicted of seven counts of defrauding financial institutions); In re Schneider, 707 So.2d 38, 39-40 (La.1998) (disbarring attorney with convictions including mail fraud, conspiracy to commit mail fraud, and intentionally submitting false statements to a financial institution); In re Kennedy, 428 Mass. 156, 697 N.E.2d 538, 541 (1998) (disbarring attorney who pleaded guilty to eleven counts of making false statements to a lender, mail fraud, and wire fraud); In re Discipline of Peterson, 260 Minn. 339, 110 N.W.2d 9, 12-14 (1961) (disbarring attorney for submitting false statements to a bank); Miss. Bar v. Castle, 38 So.3d 632, 633-34 (Miss.2010) (disbarring attorney for her involvement in a mortgage fraud operation, which resulted in her convictions for crimes including conspiracy to defraud a bank and money laundering); In re Ellis, 208 N.J. 350, 28 A.3d 1241, 1241 (2011)
*533 (disbarring attorney who pleaded guilty to bank fraud and conspiracy to commit bank fraud); In re Powder, 36 A.D.3d 283, 826 N.Y.S.2d 82, 82-83 (2006) (disbarring attorney convicted of defrauding a bank after he submitted escrow letters containing false statements in order to obtain loan proceeds); Office of Disciplinary Counsel v. Lowe, 75 Ohio St.3d 427, 662 N.E.2d 796, 796-97 (1996) (disbarring attorney convicted of using a false social security number in financial transactions, making false representations in a loan application, defrauding a bank, and transporting interstate fraudulent securities); State ex rel. Okla. Bar Ass'n v. Hobbs, 848 P.2d 551, 551-52 (Okla.1993) (disbarring attorney who pleaded guilty to bank fraud, money laundering, and embezzlement); In re Conduct of Griffith, 304 Or. 575, 748 P.2d 86, 125 (1987) (disbarring attorney who participated in sham transaction with his partner to circumvent federal banking laws and misrepresented his net worth to a bank); In re Concemi, 706 A.2d 1318, 1318-19 (R.I.1998) (disbarring attorney convicted of thirty-five felony charges, including conspiracy to defraud a bank, bank fraud, and making false statements to a bank); In re Walters, 400 S.C. 625, 735 S.E.2d 635, 636-37 (2011) (disbarring attorney who pleaded guilty to misprision of felony, bank fraud, and making false statements to a lending institution); In re Holt, 328 S.C. 169, 492 S.E.2d 793, 793 (1997) (disbarring attorney after he pleaded guilty to one count of bank fraud); In re Looby, 297 N.W.2d 487, 489 (S.D.1980) (disbarring attorney convicted of making false statements to a financial institution); Searcy v. State Bar of Texas, 604 S.W.2d 256, 260 (Tex.Civ.App.1980) (disbarring attorney convicted of making false statements to a bank in a loan application).

. This is not the first time a member of this court has written separately in a discipline case. See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Marcucci, 543 N.W.2d 879, 884 (Iowa 1996) (Neuman, J., dissenting).